**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George THOMPSON, III,**
**Defendant-Appellant.**

**No. 79–5226**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1979.

Rehearing Denied Oct. 30, 1979.

(T., Vol. III, pp. 269–270).

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Frank D. McCown, Fort Worth, Tex., for defendant-appellant.

John W. Sweeney, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

CHARLES CLARK, Circuit Judge:

On March 12, 1979, George Thompson, III was found guilty of unlawfully causing the Ridglea Bank of Fort Worth, Texas, to fail to file a currency transaction report (CTR), 31 U.S.C. §§ 1059, 1081, with the knowledge that this violation was committed in the furtherance of violations of other federal laws, in that Thompson, in violation of 18 U.S.C. § 2(b), aided and abetted Michael E. Welch in knowingly and intentionally possessing with the intent to distribute, and in distributing, cocaine in violation of 21 U.S.C. § 841(a)(1). Thompson was sentenced to three years imprisonment and fined $20,000.00. He appeals his conviction arguing first that the statute and regulations under which he was prosecuted are unconstitutionally vague as applied to him, second that he is entitled to structure a single transaction in currency as multiple loans so as to avoid reporting requirements, and third that the evidence is insufficient to establish that he caused the bank to fail to file the CTR. We reject appellant's arguments and affirm his conviction.

## I.  STATEMENT OF FACTS

George Thompson, III was Chairman of the Board of Ridglea Bank. The evidence presented at trial established that beginning in 1974, Thompson authorized a series of loans to Michael E. Welch. These loans were to enable Welch, an aspiring jazz musician, to purchase musical instruments. Welch experienced difficulty in repaying these loans and in April 1976 approached Thompson with a plan by which Thompson would arrange for additional loans to Welch. Welch proposed using the proceeds of these loans to purchase marijuana that he would in turn resell, utilizing the profits derived from the venture to repay the initial indebtedness. A series of loans followed, all approved by Thompson and disbursed in cash to Welch.[1] Welch testified that Thompson knew at the time these loans were made that the proceeds would be used to purchase marijuana. Thompson denied such knowledge, claiming that he did not know nor did he want to know what the loans were to be used for. Some time prior to March 9, 1977, Welch approached Thompson and proposed a plan whereby the proceeds of additional loans would be used to purchase cocaine which, when sold, would

---

1. The record discloses that Welch received loans of $17,600.00 on April 23, 1976, $24,800.00 on May 7, 1976, and $7,500.00 on November 9, 1976.

generate a much greater profit. than had the sales of marijuana. Again, Welch planned to use the profits to discharge his indebtedness at the Ridglea Bank. Previously having become aware of currency transaction reporting requirements, Thompson advised Welch that any future monies loaned by Ridglea Bank would be in amounts of less than $10,000 in order to avoid filing a currency transaction report. On March 9, 1977, Welch met with Thompson at Ridglea Bank in order to obtain $45,000.00. Welch again testified that Thompson knew at the time of the loan transaction that the proceeds would be used to purchase cocaine. Thompson again denied having such knowledge, claiming that he did not know nor did he want to know what the loans would be used for. Thompson had five notes prepared, each in the amount of $9,000.00 and each bearing a different maturity date. He admitted intentionally structuring the transaction in such a manner to avoid filing a currency transaction report. Thompson personally processed the notes by receiving five cash tickets from the bank's Loan and Discount Department and, upon presentation to a commercial teller, receiving $45,000.00 in cash in five separate $9,000.00 bundles. Thompson immediately transferred the entire $45,000.00 in cash to Welch at one time. Welch testified that after obtaining the $45,000.00 he purchased almost two pounds of cocaine.

No CTR was filed by the Ridglea Bank for the March 9, 1977, transaction. The commercial teller who disbursed the $45,-000.00 in cash to Thompson, and whose responsibility it was to file a CTR, testified that Thompson provided him no information from which a report could be filed. The teller further testified that Thompson was the only person who could have provided the information necessary to enable a CTR to be filed as there was no information on the loan application and Welch had no

accounts with the bank. The teller explained his failure to file a CTR as based on a reliance on Thompson's authority as Chairman of the Board and on an assumption that Thompson would tell him to file a CTR were one needed.

## II. VAGUENESS CHALLENGE

█ Appellant contends that the statute and regulations under which he was prosecuted are unconstitutionally vague as applied to him in that the terms "transaction" and "currency transaction" are nowhere defined. We reject this argument.

Congress enacted the Currency and Foreign Transactions Reporting Act "to require certain reports or records where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 1051. The Act provides that:

Transactions involving any domestic institution shall be reported to the Secretary [of the Treasury] at such time, in such manner, and in such detail as the Secretary may require if they involve the payment, receipt, or transfer of United States currency, or such other monetary instruments as the Secretary may specify, in such amounts, denominations, or both, or under such circumstances, as the Secretary shall by regulation prescribe.

31 U.S.C. § 1081. The pertinent regulation requires that:

Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a *transaction in currency* of more than $10,000.

31 C.F.R. § 103.21(a) (emphasis added). The regulations expressly define a "transaction in currency" as being "[a] transaction involving the physical transfer of currency from one person to another." 31 C.F.R. § 103.11.[2] The regulation's definition of

---

2. The regulation provides:
   *Transaction in currency.* A transaction involving the physical transfer of currency from one person to another. A transaction which is a transfer of funds by means of bank check, bank draft, wire transfer, or oth-

er written order, and which does not include the physical transfer of currency is not a transaction in currency within the meaning of this part.
31 C.F.R. § 103.11.

"transaction in currency" is reprinted in its entirety on the reverse side of Form 4789, which is utilized by financial institutions in filing CTRs. The terms "currency" and "person" also are defined in the regulations with similar specificity.[3]

The "void for vagueness" doctrine requires that a law give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the proscribed conduct. *Rowan v. United States Post Office Dep't,* 397 U.S. 728, 740, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). While criminal statutes must fairly apprise those who are subject to them as to the conduct that is proscribed, no more than a reasonable degree of certainty can be demanded. *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952); *United States v. Barnett,* 587 F.2d 252, 256 (5th Cir. 1978). *See also United States v. Griffin,* 589 F.2d 200, 207 (5th Cir. 1979), *petition for cert. filed,* 47 U.S.L.W. 3763 (U.S. May 22, 1979) (No. 78–1518).

With reference to the above authorities, we cannot say that the applicable statute and regulations as defined failed to afford appellant fair notice of what constitutes a "transaction in currency of more than $10,000." Rather, the government's proof at trial clearly established a violation of the reporting requirements as defined, in that an unreported physical transfer of $45,000.00 in cash from the Ridglea Bank to Welch occurred on March 9, 1977. The mere fact that appellant intentionally structured the $45,000.00 transfer as five $9,000.00 loans with different maturity dates does not remove the transaction from the ambit of the reporting requirements, where these loans were executed by the same borrower, on the same day, in the same bank, and where the proceeds of the loans totalling in excess of $10,000.00 were physically transferred by the financial institution to the borrower at the same time and place.

### III. AVOIDANCE ISSUE

Appellant argues that he was entitled to structure a single transaction in currency as multiple loans, thus avoiding the obligation to report pursuant to § 1081 and the relevant regulations. Appellant analogizes this to a taxpayer structuring a financial transaction in a certain manner to avoid, rather than evade, the payment of taxes. The analogy is inapposite. Congress has lawfully required reporting of transactions in currency of more than $10,000.00 as an aid to criminal, tax, or regulatory investigations or proceedings.[4] In the instant case, appellant intentionally sought to defeat the statutory requirements by engaging in an unreported transaction in currency of more than $10,000.00. Appellant cannot flout the requirements of § 1081 with impunity. The decision to structure a $45,000.00 transaction in currency as five

---

**3.** The regulation provides:

*Currency.* The coin and currency of the United States or of any other country, which circulate in and are customarily used and accepted as money in the country in which issued. It includes U.S. silver certificates, U.S. notes and Federal Reserve notes, but does not include bank checks or other negotiable instruments not customarily accepted as money.

\* \* \* \* \* \*

*Person.* An individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, and all entities cognizable as legal personalities.
31 C.F.R. § 103.11.

**4.** There can be no doubt that Congress enacted the reporting provisions as an aid to criminal, tax, or regulatory investigations and proceedings. *See* 31 U.S.C. § 1051; H.R.Rep. No. 91–975 (1970) *reprinted in* [1970] 2 U.S.Code Cong. & Admin.News, pp. 4394, 4396; 31 C.F.R. § 103.21. The United States Supreme Court recognized this purpose when it rejected various constitutional challenges raised against the reporting requirements. *See California Bankers Ass'n v. Shultz,* 416 U.S. 21, 37–38, 63–78, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

**1204**

$9,000.00 loans with the intent to annul the reporting requirements does not equate to a decision to structure a financial transaction in a lawful manner so as to minimize or avoid the applicability of a tax covering only specific activity.

## IV. SUFFICIENCY OF EVIDENCE

■ Appellant also argues that the evidence presented at trial was insufficient to establish that he caused Ridglea Bank to fail to file the required CTR. The sufficiency of the evidence must be viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), with all credibility choices considered in support of the jury verdict. *United States v. Barresi*, 601 F.2d 193 (5th Cir. 1979) (per curiam); *United States v. Black*, 497 F.2d 1039, 1041 (5th Cir. 1974). Applying this standard to the evidence produced at trial, we find the evidence sufficient to support the jury's verdict.

The judgment is therefore

AFFIRMED.