**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Manuel Ronald PUERTO, Edgar Gilberto Puerto, L. Jean Everett, a/k/a Jean Kendall, Defendants-Appellants.**

**No. 82–6019.**

United States Court of Appeals,
Eleventh Circuit.

April 20, 1984.

Rehearing Denied July 10, 1984.

Fine, Jacobs, Block, Klein, Colan & Simon, PA, Theodore Klein, Joseph Serota, Miami, Fla., for Manuel Puerto and Edgar Puerto.

Robyn J. Hermann, Deputy Federal Public Defender, Charles Auslander, Asst. Federal Public Defender, Miami, Fla., for Everett.

Stanley Marcus, U.S. Atty., Vera E. Gilford, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL and HATCHETT, Circuit Judges, and ALLGOOD *, District Judge.

HATCHETT, Circuit Judge:

In this case we determine whether the evidence is sufficient to sustain the convictions of appellants for causing a financial institution to fail to file Currency Transaction Reports. We find the evidence sufficient and affirm.

### Facts

This case arises out of activity occurring between October, 1980, and December, 1980, when L. Jean Everett worked at the Merchants Bank of Miami as a head teller. Edgar Puerto and Manuel Puerto were customers of the bank. Perla Abaroa, a key witness for the government, was a collections teller at the bank.

Manuel Puerto approached Abaroa in the fall of 1980 and asked her to sell him cashier's checks for large sums of cash.

---

* Hon. Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

The Puertos told her to use fictitious names and draw the cashier's checks in those names. Regarding the filing of Currency Transaction Reports (CTRs), Abaroa stated:

> I told them that anything over $10,000 would have to be reported, and that if I was ever caught in this, what was I to do, since they were fictitious names? He told me to make reports out under the names of the checks ... he just said if they can be filed under the names of the issued cashier's checks, under the people I made them out to, but he did not want to be involved in anything. He did not want his name to appear on anything.

Manuel and Edgar Puerto were given a duplicate set of Abaroa's automobile keys to facilitate delivery of the money to the trunk of her automobile. The Puertos would telephone Abaroa to inform her of the delivery of the money. Abaroa would retrieve the briefcase with the money from her automobile and take the money into the bank where she would give the briefcase to Everett. Everett would count and verify the amount of money and return it to Abaroa. Once or twice Abaroa received a cash tip (approximately $2,000 found in the trunk of her automobile), which she shared with Everett. After telling Everett about her conversations with the Puertos, Everett's response was: "Be careful, I would not do that if I were you. Just be careful."

Clark Drapes, management analyst with the Internal Revenue Service (IRS) responsible for coordinating the CTRs, testified that during the time period the Puertos had United States currency in excess of $10,000 exchanged for cashier's checks, no CTRs were filed in the name of Edgar, Manuel, or Martha Puerto.

The charges brought against the Puertos and Everett arose from those federal statutes and regulations concerning the duty of a financial institution to file documents known as Currency Transaction Reports

with the IRS as required by law.[1] A CTR is a report filed by a bank whenever a transaction occurs involving cash over $10,000. The relevant regulation provides:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

Title 31 C.F.R. § 103.22(a) (1983). At the Merchants Bank of Miami, the procedure for filing CTRs was for the bank tellers to acquire basic information from the customer involved in the transaction and forward that information to Charlotte Giordano, vice president in charge of personnel. Giordano would then complete the CTR and file it with the IRS in Ogden, Utah.

Manuel Puerto, in the presence of Edgar Puerto, told Abaroa, the bank teller, to sell him cashier's checks in sums over $10,000, yet send to Giordano false information concerning the transaction. The Puertos insisted that the CTRs be filed under the fictitious names on the cashier's checks. Abaroa, on her own, chose not to pass on any information to Giordano.[2] Consequently, the bank filed no CTRs concerning the transactions with the Puertos.

The grand jury charged, by indictment, the Puertos and Everett with the following offenses: (1) conspiracy to unlawfully defraud the United States, in particular, the Internal Revenue Service, by impairing, obstructing, and defeating its lawful government functions of the collection of data and reports of currency transactions in excess of $10,000, in violation of 18 U.S.C.A. § 371 (West 1966), (2) falsifying and concealing by scheme and device material facts within the jurisdiction of an agency or a department of the United States, that is, the Internal Revenue Service of the Department of Treasury, in violation of 18 U.S.C.A. §§ 1001 and 2(b) (West 1966), (3) intentionally failing to file and causing the failure to file of CTRs with the Internal Revenue Service in connection with the transactions of United States currency in excess of $10,000, as part of a pattern of illegal activity involving transactions exceeding $100,000 in a 12-month period, in violation of 31 U.S.C.S. §§ 1059 and 1081 (Law.Co-op.1979), 18 U.S.C.A. § 2 (West 1966), and 31 C.F.R. §§ 103.22(a) and 103.25(a) (1983).

At the close of the government's case and at the close of the case the Puertos and Everett moved for judgment of acquittal. The motions were denied. The jury returned guilty verdicts on all three counts against Everett and the Puertos, but acquitted Martha Puerto.

We must determine whether the evidence was sufficient to find the Puertos and Everett guilty of all three counts in the indictment.

### Discussion

The Puertos and Everett first contend that the evidence presented at trial is insuf-

---

1. Title 31 U.S.C.S. § 1081 (Law.Co-op.1979) provides:

   § 1081. Reports.
   Transactions involving any domestic financial institution shall be reported to the Secretary at such time, in such manner, and in such detail as the Secretary may require if they involve the payment, receipt, or transfer of United States currency, or such other monetary instruments as the Secretary may specify, in such amounts, denominations, or both, or under such circumstances, as the Secretary shall by regulation prescribe.
   Title 31 U.S.C.S. § 1059 (Law.Co-op.1979) provides:

   § 1059. Additional criminal penalty in certain cases

   Whoever willfully violates any provision of this title where the violation is—
   (1) committed in furtherance of the commission of any other violation of Federal law, or
   (2) committed as part of a pattern of illegal activity involving transactions exceeding $100,000 in any twelve-month period,
   shall be fined not more than $500,000 or imprisoned not more than five years, or both.

2. What the Puertos told Abaroa was contested at trial. Since the jury could have accepted the government's view that she was told not to file any CTRs, we also accept that view. It makes no difference in light of our ruling.

ficient to prove beyond a reasonable doubt that they conspired to defraud the United States in violation of 18 U.S.C.A. § 371.[3]

The Fifth Circuit stated the standard by which a court must review a sufficiency of the evidence claim when it held:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

In applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it when the facts are viewed in the light most favorable to the government.

*United States v. Davis,* 666 F.2d 195, 201 (5th Cir. Unit B 1982). Title 18 U.S.C.A. § 371 deals with conspiracies to commit offenses or to defraud the United States. The courts have held that in prosecutions under 18 U.S.C.A. § 371, the government is required to prove an agreement to defraud the United States and that one or more persons acted in furtherance of that objective. *United States v. Browning,* 723 F.2d 1544 (11th Cir.1984).

Because the essential nature of conspiracy is secrecy, such an agreement may be proved by circumstantial as well as direct evidence. *United States v. Horton,* 646 F.2d 181, 185 (5th Cir.1981); *see United States v. Enstam,* 622 F.2d 857, 863–64 (5th Cir.1980). In order for a

reasonably minded jury to find that the defendant was a member of the conspiracy, 'the government must have shown beyond a reasonable doubt, if only by circumstantial evidence, that a conspiracy existed, that [the defendant] knew of it and that he intended to associate himself with the objectives of the conspiracy.' *United States v. Horton,* 646 F.2d at 185. The defendant may be found guilty of conspiracy if the evidence demonstrates that he knew the essential objectives of the conspiracy, even though he did not know all of its details or played only a minor role in the overall scheme. *United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir.1980) (en banc). *Browning,* 723 F.2d at 1546.

■ The courts have held that a conspiracy to submit false or misleading affidavits to a government agency in order to impede its lawful functions constitutes a violation of 18 U.S.C.A. § 371. *In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982). Conspiracies in violation of section 371 need not cause any monetary loss to the government, so long as they interfere with or obstruct its lawful functions. *Id.* at 815. The Supreme Court held in *Dennis v. United States,* 384 U.S. 855, 860–61, 86 S.Ct. 1840, 1843–44, 16 L.Ed.2d 973 (1966), that section 371 reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.

To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate

---

**3.** Title 18 U.S.C. § 371 provides:

§ 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect

the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention. *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924).

The Supreme Court, in *California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974), recognized the importance to the government of having financial institutions provide reports of their customers' large currency transactions to the Secretary of the Treasury. The Currency Transaction Reports are necessary to ferret out criminal activity. *Shultz*, 416 U.S. at 27, 94 S.Ct. at 1500. "The Secretary hereby determines that the reports required by this subpart have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 C.F.R. § 103.29.

In this case a conspiracy existed to unlawfully defraud the United States by impairing and obstructing its lawful government functions of the collection of data and reports of currency transactions in excess of $10,000. The government (IRS) has an interest in receiving accurate reports from financial institutions indicating when customers engage in transactions in excess of $10,000. It seeks this information in furtherance of its criminal, tax, and regulatory investigations and proceedings. In order for this lawful governmental function to proceed, it is vital that accurate reports be sent by financial institutions to the IRS. The Puertos and Everett interfered with and obstructed this lawful function of the IRS by conspiring to submit false CTRs to the financial institution. Thus, they interfered with and obstructed the lawful functions of the government in the collection of data and reports of currency transactions in excess of $10,000 for use in criminal, tax, and regulatory investigations and proceedings. The Puertos and Everett defrauded the United States Government, in violation of 18 U.S.C.A. § 371, by conspiring to have the financial institution transmit false CTRs to the IRS.

■ A concert of action existed by the Puertos and Everett to defraud the United States. Through direct as well as circumstantial evidence, it is apparent that both the Puertos and Everett were active, willing members of the conspiracy to defraud the United States. Although Everett's role may have been minor, the courts are firm that a defendant may be found guilty of conspiracy if the evidence demonstrates that he knew the essential objectives of the conspiracy. This rule stands even though the person may not know all of its details or played only a minor role in the overall scheme. *Alvarez*, 625 F.2d at 1198. The overt acts by the Puertos and Everett in furtherance of the conspiracy consisted of delivery of the cash to the bank parking lot and Everett's verification of the amount of money.

■ The Puertos and Everett have strenuously argued that they are not guilty of the three counts. First, they allege that the duty to file the CTRs rests solely with the financial institutions. Although the financial institutions bear the ultimate duty to transmit the CTRs to the IRS, the Eleventh Circuit has held that where a person causes a financial institution not to report currency transactions that it had a duty to report, the person is guilty of the substantive offense. *United States v. Tobon-Builes*, 706 F.2d 1092 (11th Cir.1983).

Second, the Puertos and Everett contend that it was Abaroa's decision not to file the CTRs or not to send the required information to Giordano. On appeal, as an alternative argument, the Puertos, in effect, admit that they told Abaroa to file false CTRs. They strenuously argue, however, that they never told Abaroa not to file any CTRs. The decision not to file any CTRs, they contend, was made by Abaroa alone.

Under 18 U.S.C.A. § 371, it is incumbent upon this court to determine whether substantial evidence existed to support the jury's finding that the Puertos and Everett conspired to defraud the United States. The evidence is clear that the Puertos and Everett did conspire to defraud the govern-

ment by having the bank transmit false CTRs to the IRS. The Puertos and Everett conspired to impede and obstruct the lawful functions of the United States Government. Whether Abaroa, on her own, decided not to file any CTRs is irrelevant to this conspiracy count. Regardless of Abaroa's ultimate decision, a conspiratorial agreement existed between Abaroa, the Puertos, and Everett to defraud the government. When the Puertos and Abaroa agreed that she would sell them cashier's checks using false names, that she would transmit the false names on the CTRs, and they took acts in furtherance of the agreement, they violated 18 U.S.C.A. § 371.

Counts II and III of the indictment charge the Puertos and Everett with falsifying, concealing, and covering-up material facts within the jurisdiction of the IRS, in violation of 18 U.S.C.A. §§ 1001[4] and 2, and failure to file Currency Transaction Reports, in violation of 31 U.S.C.S. §§ 1059 and 1081, 18 U.S.C.A. § 2, and 31 C.F.R. §§ 103.22(a) and 103.25(a). Appellants correctly assert that the *Tobon-Builes* case is crucial in the analysis of alleged section 1001 and section 1081 violations. The two counts charge that the Puertos and Everett, through scheme and device, concealed material facts from the IRS by knowingly and intentionally failing to file and causing the bank to fail to file Currency Transaction Reports.

The court in *Tobon-Builes* stressed that a defendant may be found guilty under section 1001 where proof exists that the defendant willfully and knowingly caused financial institutions not to report currency transactions.

Furthermore, the requirement that a defendant must have a legal duty to disclose before he can be convicted of concealment under § 1001 has no application where, as here, the government charged and proved that Tobon willfully and knowingly caused financial institutions not to report currency transactions that they had a duty to report and would have reported if they had known about such transactions. Support for this holding is found in 18 U.S.C. § 2(b) which provides that one who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." Section 2(b), a definitional provision, is directly applicable to convictions under § 1001.

*Tobon-Builes*, 706 F.2d at 1099. This theory was also applied by the Fifth Circuit to cover alleged violations of 31 U.S.C.S. §§ 1059 and 1081. *United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979).

The argument raised by the Puertos and Everett regarding the section 1001 and section 1081 charges is interesting. They argue that the section 1081 duty to file a CTR and the section 1001 concealment of a material fact from the government apply when a person causes a financial institution not to report any currency transaction. They contend, and we find record support for their contention that, although they told Abaroa to file false CTRs, it was Abaroa's decision not to file any CTRs. Because the decision not to file any CTR was made by Abaroa alone, the contention is urged that under *Tobon-Builes*, no violation of sections 1001 and 1081 exists. They have misread the *Tobon-Builes* decision and failed to grasp the purpose of the federal statutes and regulations under consideration.

■ We interpret the *Tobon-Builes* decision to hold that a person violates 18 U.S.C.A. § 1001 and 31 U.S.C.S. §§ 1059 and 1081 when he willfully and knowingly causes a financial institution not to *accurately* report currency transactions that it has a

---

**4.** Title 18 U.S.C. § 1001 provides:

§ 1001. Statements or entries generally

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

duty to report and would report accurately if it knew about the transaction. The thrust of the statutes and regulations is designed to compel transmission of accurate information to the IRS. *Tobon-Builes* must be read to promote this aim. The *Tobon-Builes* decision must not be read to hold that a violation occurs only when a person causes a financial institution not to report any currency transaction. A person violates the statutes and regulations, under the binding case law, when he either causes a financial institution not to report *any* currency transaction, or when he causes a financial institution not to report *accurately* a currency transaction. Where, as here, a person conspires to transmit false information to a financial institution, with knowledge that the false information will be passed on to the government, and the required, proper CTRs are not sent to the government, the person has violated (1) 18 U.S.C.A. § 371, (2) 18 U.S.C.A. §§ 1001 and 2, and (3) 31 U.S.C.S. §§ 1059 and 1081, 18 U.S.C.A. § 2, and 31 C.F.R. §§ 103.22(a) and 103.25(a).

The Fifth Circuit analyzed a question similar to the one now before this court in *McClanahan v. United States*, 230 F.2d 919 (5th Cir.1956). The defendant, in *McClanahan*, used veterans as phoney purchasers of dwellings in order to obtain low interest Veterans Administration mortgage loans. Defendant caused the veterans to make out false affidavits stating that they would occupy the property as their homestead. None of the veterans in the transactions had any intention of occupying the premises. The defendant was charged and convicted of knowingly and willfully, by a scheme, trick, and device, concealing and covering up and causing to be concealed and covered up the material fact that the named veteran did not intend to occupy the described premises. 18 U.S.C.A. § 1001.

■ In this case, the Puertos and Everett, by conspiring with Abaroa to send false CTRs to the IRS, sought to conceal from the government the true identity of those involved in the transactions. They sought to conceal a material fact from the government when they conspired to send inaccurate reports to the government. Although Abaroa deviated from the original plan, the general goal of concealment was achieved. Under *McClanahan*, when the defendant agreed to send false information to the government, he conspired to conceal material facts from the government. A defendant is guilty of concealment of a material fact when he causes either an inaccurate CTR or no CTR to be sent by the financial institution to the IRS. Under *Tobon-Builes* and *Thompson*, a defendant who seeks to cause a financial institution to send an inaccurate CTR to the IRS is guilty of causing a bank to fail to file the proper CTRs.

■ The Puertos and Everett are held accountable for the bank's failure to file by 18 U.S.C. § 2(b).

> Support for this holding is found in 18 U.S.C. § 2(b) which provides that one who 'willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.' Section 2(b), a definitional provision, is directly applicable to convictions under § 1001.
>
> . . . .
>
> [I]t is well established that § 2(b) was designed to impose criminal liability on one who causes an intermediary to commit a criminal act, even though the intermediary who performed the act has no criminal intent and hence is innocent of the substantive crime charged, in this case concealment. *See United States v. Pereira*, 202 F.2d [830] at 836–37 [5th Cir.1953].

*Tobon-Builes*, 706 F.2d at 1099.

In *Tobon-Builes*, the defendant sought to prevent the financial institution from reporting any currency transaction. In the present case, the Puertos and Everett sought to prevent the financial institution from accurately reporting currency transactions to the government. In both cases, the defendants sought to impede the lawful functions of the government and concealed

material facts from the government. Although Abaroa, on her own, decided not to file any reports, the result is the same. It is not critical to our disposition of this case that Abaroa may have deviated from the original conspiratorial plan.

The IRS will be deceived and its lawful functions impaired when no report is sent as well as when an inaccurate report is sent. Under *Tobon-Builes*, the Puertos and Everett are guilty of violating sections 1001, 1059, and 1081, and 31 C.F.R. §§ 103.22(a) and 103.25(a). The key point remains that what the Puertos and Everett originally planned to do and what Abaroa eventually did, are, in effect, the same.

■ The remaining claims of the Puertos and Everett are meritless, and therefore, will not be discussed at length. As to their claim that the trial court erred in admitting into evidence the testimony of an unindicted co-conspirator, we affirm the decision of the district court. The district court properly followed the dictates set out in *United States v. James*, 590 F.2d 575 (5th Cir. 1979). "The district court's assessment of the *James* issue is a finding of fact which will be overturned only if it is clearly erroneous." *United States v. Correa-Arroyave*, 727 F.2d 1116 (11th Cir.1983). The district court's decision to admit the co-conspirator's statements was not clearly erroneous.

■ The Puertos and Everett have not shown that the trial court abused its discretion when it admitted into evidence the ninety-five documents. Without a showing of abuse of discretion, this court must defer to the broad discretion given to district courts in determining the relevance and materiality of evidence. *United States v. Ashley*, 555 F.2d 462 (5th Cir.1977).

As to appellants' final claim, the record is devoid of evidence indicating that the Puertos were exempt from filing Currency Transaction Reports. The amended regulations indicate no exemption available to the Puertos. Although the new CTR forms (as amended June 5, 1980) may not have been available in Miami, Florida, during the time period in question, no evidence has been presented to show that the old forms could not have been utilized under the guidelines and time restrictions imposed by the new law. Moreover, under either the old or new form, the evidence at trial indicated that the bank at which the Puertos conducted their banking had a policy of no exemptions.

We find, as to all three counts, that the evidence was sufficient for a reasonable trier of fact to conclude that guilt was established beyond a reasonable doubt. We affirm the convictions of the Puertos and Everett as to all three counts.

AFFIRMED.