UNITED STATES of America,

v.

**Hermena PERLMUTTER, Defendant.**

**No. 86 Cr. 207 (RWS).**

United States District Court,
S.D. New York.

May 20, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States; John M. McEnany, Asst. U.S. Atty., of counsel.

Kantor, Davidoff, Wolfe, Rabbino & Kass, P.C., New York City, Kaplowitz & Wise, Linden, N.J., for defendant; Herbert C. Kantor, New York City, Leo Kaplowitz, Linden, N.J., of counsel.

SWEET, District Judge.

Defendant Hermena Perlmutter ("Perlmutter") has moved pursuant to Fed.R. Crim.P. Rule 12(b)(2) for dismissal of counts one through eight of the nine-count superseding indictment filed April 17, 1986 charging violations of the Bank Secrecy Act on the grounds that these counts are facially insufficient. For the reasons set forth below, the motion for dismissal of counts one through eight is granted.

**The Indictment**

The counts of the indictment challenged here relate to the financial services which Perlmutter, an attorney, performed for clients in connection with her legal representation. Four transactions are principally at issue, each giving rise to a pair of indictment counts comprising the eight counts at issue. Each pair, as it relates to a transaction, will be individually summarized as set forth in the indictment and the moving papers.

Counts one and two of the indictment relate to Perlmutter's services in connection with her purchase of real estate on behalf of a client, Daniel Washington, in March, 1981. According to the government, Perlmutter assisted Washington in "laundering" money obtained from the drug trade by making two deposits of $9,300.00 on March 11, 1981 each in different bank accounts, at the Merchants' Bank of New York followed by an additional $200.00 deposit in each account the following day. No Currency Transaction Report ("CTR") was filed for these transactions. Count One of the indictment charges that the defendant concealed from the Department of the Treasury and the Immigration and Naturalization Service the fact that "facially separate" deposits of United States currency were made in violation of 18 U.S.C. sections 1001 [1] and 2(b) [2], which proscribe respectively concealment of material information from the federal government and aiding and abetting or causing the banks to commit a crime.

Count Two charges Perlmutter with aiding and abetting, in violation of 18 U.S.C. 2(b), the Merchants Bank to fail to file a CTR in violation of the Currency Transaction Reporting Act, 31 U.S.C. § 5311 *et seq.*,[3] otherwise known as the Bank Secrecy Act. In essence, Counts One and Two charge Perlmutter with structuring her transactions to avoid triggering the bank's $10,000 reporting requirement.

Counts Seven and Eight involve the same pattern of transactions in furtherance of another real estate purchase on behalf of Perlmutter's clients. According to the government, on October 14, 1982, Perlmutter purchased two Emigrant Savings Bank tellers' checks for $5,000.00 and $7,000.00 in different names to avoid exceeding the $10,000.00 reporting limit. No CTR was filed for this transaction, and the government similarly has charged violations of 18 U.S.C. § 1001, 2(b) and 31 U.S.C. § 5311 *et seq.*

1. § 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 2 provides:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as principal.

   (b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. Counts one through six of the indictment occurred *prior to the recodification of the Act* on September 13, 1982, Pub.L. 97–258. Section 1081, corresponding to effective Section 5313 stated in relevant part:
   Transactions involving any domestic financial institution shall be reported to the Secretary at such time, in such manner, and in such detail as the Secretary may require *if they* involve the payment, receipt, or transfer of United States currency, in such amounts as the Secretary shall by regulation prescribe.

Counts Three through Six of the indictment pertain to a single real estate transaction but involve two separate currency transactions which support the related "pairs" of indictment counts. The government claims that on August 19, 1981 Perlmutter purchased tellers' checks from Emigrant Savings Bank in her own name in the amounts of $5,000.00, $3,500.00 (two) and $2,200.00, totalling $14,000.00 in a single day. While a CTR was filed for these checks, the government contends that Perlmutter withheld or concealed the person on whose behalf the transaction was made, in violation of 18 U.S.C. § 1001 and 2(b). Count Four derivatively charges that this failure to disclose the principal of the transaction caused the Emigrant Savings Bank to file a false CTR with respect to the purchase of $14,000.00 of tellers' checks in violation of the Bank Secrecy Act and 18 U.S.C. § 2(b). Counts Five and Six charge violations of the same section respectively for a November 9, 1981 purchase of a certified check in the amount of $120,-000.00. A CTR was also filed for this real estate transaction, but it did not reveal that the transaction was on behalf of anyone other than Perlmutter.

Perlmutter, through each of the four transactions, is thus alleged to have violated 18 U.S.C. § 1001 by withholding or concealing from the government material information concerning the transactions, and is alleged to have violated 31 U.S.C. § 5311 *et seq* by causing the banks to file an inaccurate CTR or not to file a CTR at all.[4]

**Statutory Scheme**

Section 5313 of the Currency Transaction Reporting Act authorizes the Secretary of the Treasury to require financial institutions and other participants in certain currency transactions to file a CTR detailing the transaction for the Secretary:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes) in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution, and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

31 U.S.C. § 5313(a).

The Secretary chose to exercise only a subpart of this plenary power to require institutions and other participants to file CTRs. The Secretary's regulations in effect at the time of these events subjected only financial institutions (defined in 31 U.S.C. § 5312(a)(2)), and not individuals to this reporting requirement for transactions in currency of over $10,000.00:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

31 C.F.R. § 103.22(a) (1982).[5]

The reporting form which the Secretary issued during the relevant period was In-

---

**4.** Count Nine of the indictment, which is not challenged in this motion, charges Perlmutter with inducing a witness to make false or misleading statements to a grand jury regarding the preparation of tax returns for a client, in violation of Title 18 U.S.C. § 1503.

**5.** The Secretary's revised regulations are substantially similar to those in effect in 1982. They provide:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22(a) (1984).

ternal Revenue Service ("IRS") Form 4789, the only IRS document to mention the problem of multiple transactions designed to avoid the $10,000.00 reporting threshold: [6]

> Each financial institution must file a Form 4789 for each deposit, withdrawal, exchange of currency or other payment or transfer, by, through or to that financial institution, which involves a transaction in currency of more than $10,000. Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction if the financial institution is aware of them.

Congress has enacted, in the intervening period between these financial transactions and the present, section 6050I of the Internal Revenue Code, 26 U.S.C. § 6050I (West Dec. 1984), which places a similar reporting burden on any person who receives in excess of $10,000 in one or two or more related transactions, provides in part:

> (a) Cash Receipts of more than $10,-000.00—Any person—
>
> (1) who is engaged in a trade or business, and
>
> (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions),
>
> shall make the return described in subsection (b) with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe.

Therefore, this court, analyzing the indictment under statutes predating section 6050I, faces a limited, but, nevertheless, important statutory ambiguity.

**Discussion**

This facial challenge to the Perlmutter indictment poses a question without prior Second Circuit treatment,[7] in the context of a split of opinion among the circuit courts. Counts One through Eight of the indictment essentially charge Perlmutter with "structuring" her financial dealings for clients to avoid the $10,000.00 reporting requirements in 31 C.F.R. § 103.22. Although there is no dispute that only the bank is required to file a CTR in such an instance, the government asserts that this avoidance tactic constitutes aiding and abetting, 18 U.S.C. § 2(b), or causing the bank to violate the Bank Security Act, 31 U.S.C. §§ 5313, 5322 and causes the concealment of material facts from the federal government in violation of 18 U.S.C. §§ 1001, and 2(b).

Perlmutter, relying on the "void for vagueness" analysis in the recent opinions of the First Circuit in *United States v. Anzalone*, 766 F.2d 676 (1st Cir.1985) and the Ninth Circuit in *United States v. Varbel*, 780 F.2d 758 (9th Cir.1986) contends that the imposition of criminal sanctions under these circumstances violates her Fifth Amendment due process rights because she had no fair warning or notice that structuring her transaction to avoid reporting statutes would result in criminal penalties. According to Perlmutter, the Secretary's decision to use only a small part of the plenary power granted by 31 U.S.C. § 5313 by requiring only financial institutions to file a CTR, 31 CFR § 103.22, reinforced the impression that private persons would not incur criminal liability for apportioning transactions to avoid reporting, as they had no independent duty to consolidate those transactions or inform

---

**6.** These admonitions on the currency transaction form do not have the force of law, as they were not rules or regulations adopted by the Department of the Treasury pursuant to the notice and comment rulemaking in Administrative Procedure Act, 5 U.S.C. § 500 *et seq. United States v. Anzalone*, 766 F.2d 676, 679 n. 6 (1st Cir.1985); *United States v. Richter*, 610 F.Supp. 480, 489 n. 14 (N.D.Ill.1985).

**7.** The Second Circuit has considered the validity of an indictment which charges persons as financial institutions within the meaning of 31 U.S.C. § 5314, *United States v. Goldberg*, 587 F.Supp. 302 (S.D.N.Y.1984), *dismissal vacated,* 756 F.2d 949 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985) and will hear an appeal of a verdict based upon a jury charge which incorporated the *Tobon-Builes* analysis in its instructions. *United States v. Heyman*, No. 85 Cr. 31 (S.D.N.Y.1986).

the bank of their existence. As the *Anzalone* court observed, the Comptroller General of the United States specifically noted in a Report to Congress that the Secretary's regulations "... were silent on the propriety of a customer's conducting multiple transactions to avoid reporting." 766 F.2d at 681–82, *citing* "Bank Secrecy Act Reporting Requirements Have Not Yet Met Expectations, Suggesting Need for Amendment," GED–81–80, July 23, 1981.

The government relies principally on two earlier Fifth and Eleventh Circuit cases, *United States v. Tobon-Builes*, 706 F.2d 1092 (11th Cir.), *reh. denied*, 716 F.2d 914 (1983) and *United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979) and their district court progeny, to support the contention that criminal sanctions may be imposed on those who purposefully attempt to circumvent the bank's filing of a CTR, particularly in instances when same-day transactions are fractured so that no single exchange reaches the $10,000 limit which if combined would require the bank to file a CTR. The government thus embraces the "substance over form approach" of *United States v. Tobon-Builes, supra,* 706 F.2d at 1098 explicitly rejected by the *Anzalone* court: [8]

> In the instant case, Tobon's wilfulness was clearly established by evidence showing he knew about the currency reporting requirements and that he purposely sought to prevent the financial institutions from filing required reports by using false names and by structuring his transactions as multiple smaller transactions under $10,000. Moreover, because of Tobon's deceptive transactions, the financial institutions, i.e., the innocent intermediaries, were duped into

not reporting currency transactions they would have had a duty to report had they known about Tobon's scheme. Thus, by operation of § 2(b), Tobon's criminal intent to cause concealment is joined together with his innocent intermediaries' duties to report (i.e their capacity to commit the crime of concealment) and their failure to report (i.e "the forbidden act") to constitute the elements of actionable concealment under § 1001.

*Id.* at 1001. *See also United States v. Richter,* 610 F.Supp. 480 (N.D.Ill.1985), *aff'd,* 735 F.2d 312 (7th Cir.1986); *United States v. Konefal,* 566 F.Supp. 698 (N.D.N.Y.1983).

While the bootstrapping of aiding and abetting crimes with hypothetical bank violations is an appealing way to punish clear attempts to circumvent the important purposes behind the Bank Secrecy Act, it employs· a "cart-before-the-horse" reasoning which the First Circuit in *Anzalone* correctly identified as a threat to due process protections. The government's theory would convict Perlmutter for causing the bank to fail to file CTR's on transactions which, had they been grouped together, would have required that a CTR be filed. Although nothing in Title 31 or the implementing regulations prohibited financial posturing in avoidance of the $10,000 limit, the failure to file such a report supplies the "crime" underlying the aiding and abetting violation in the government's view. As the *Anzalone* court observed:

> If the government wishes to impose a duty on customers, or "other participants in the transaction" to report "structured" transactions, let it require so in plain language. It should not attempt to

---

**8.** Even prior to the First Circuit's opinion in *Anzalone,* the Eleventh Circuit had begun to question or limit the scope of its decision in *United States v. Tobon-Builes, supra,* in *United States v. Denemark,* 779 F.2d 1559 (11th Cir. 1986). Although the *Denemark* case attempted to limit both the *Tobon-Builes* and *Thompson* cases by distinguishing their facts, the court raised the same due process concerns:

> The recognized fact that Congress sought to give the Treasury an opportunity to obtain information about large amounts of cash can-

not have the effect of making criminal conduct that does not fall within the very wide scope of Section 1001.

> We must be guided by the Supreme Court's decision in *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939): "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the state commands or forbids." 306 U.S. at 453, 59 S.Ct. at 619.

> *Id.* at 1563.

impose such a duty by implication, expecting that the courts will stretch statutory construction past the breaking point to accommodate the government's interpretation.

. . . . .

As no such duty existed on behalf of the appellant to report to the Secretary either directly or through the financial institution, there can be no concealment in violation of 18 U.S.C. § 1001 ... The 18 U.S.C. § 2 allegations must also therefore fail since appellant did not abet or cause anyone to commit a crime against the United States. The Bank, under the circumstances of this case, did not commit any crime by failing to report transactions, as it lacked knowledge of their "structured" nature.

*United States v. Anzalone, supra,* 766 F.2d at 682–683.[9]

The same is true for Counts Three, Four, Five and Six of the indictment, which charge Perlmutter under 18 U.S.C. §§ 2(b), 1001 with causing the bank to file false currency transaction reports which failed to disclose the party for whom the transaction was being made. Section 2(b) and 1001 liability for falsifying or concealing a material fact from the government is dependent upon the applicability of the Bank Secrecy Act reporting requirements to Perlmutter. The only mention of a duty to disclose the principal of the transaction appears in the enabling statute 31 U.S.C. § 5313, which instructs that "A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made." 31 U.S.C. § 5313(a). However, all mention of these "participants" was eliminated from the implementing regulations, 31 CFR § 103, 22(a) (1984) which imposed no such duty on the bank. Although form 4789 calls for, among other

information, the name and address of a person on behalf of whom the transaction is being conducted, this form places the reporting duty on the bank and not the customer who makes the financial exchange and as discussed *supra,* was not a properly adopted agency rule. As the court in *Anzalone* succinctly stated:

> But in prosecuting a § 1001 concealment violation, it is incumbent upon the government to prove that the defendant has a *legal duty* to disclose the material facts at the time he was alleged to have concealed them ... As no such duty existed on behalf of appellant to report to the Secretary either directly or through the financial institution, there can be no concealment in violation of 18 U.S.C. § 1001.

*United States v. Anzalone, supra,* 766 F.2d at 683 (citations omitted) (emphasis in original), *see also United States v. Varbel, supra,* 780 F.2d at 762 (since appellants had no duty to report their currency transactions to or through the bank, there can be no concealment in violation of 18 U.S.C. § 1001). *Contra United States v. Cook,* 745 F.2d 1311, 1314–1315, (10th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985); *United States v. Puerto,* 730 F.2d 627, 633 (11th Cir.), *cert. denied, Everett v. U.S.,* — U.S. —, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984).

▮ The government objects to this void for vagueness or lack of notice argument, contending that the presence of Perlmutter's explicit intent to structure the transaction to avoid the $10,000 threshold belies a claim that the statute is so vague that she was unaware of what would trigger the reporting requirements under the statute. The government is clearly correct in concluding that Perlmutter intended to avoid reporting requirements, as the intent inherent in depositing $9,800 in two ac-

---

**9.** The government also relies on a post-*Anzalone* decision by the Massachusetts District Court, *United States of America v. Bank of New England N.A.,* 640 F.Supp. 36 (D.Mass.1986) to support its view that the *Anzalone* opinion does not preclude charging a defendant who

makes a series of unitary transfers in a single day at a single bank with violations of the Bank Secrecy Act. As the government concedes, however, the bank itself was named as a defendant in the case and was not an "innocent intermediary" caused to violate reporting requirements.

counts on one day, followed by $200 the next, speaks for itself. However, focusing on the "structuring" intent does not mean that Perlmutter had notice that the explicit $10,000.00 line drawn by the government would be blurred by an intent analysis. While it is unfortunate that what some would label improper avoidance behavior cannot be punished in this instance, the due process clause requires that a criminal offense must be explicit, and not merely inferrable from the relevant statute. *See United States v. Varbel, supra,* 780 F.2d at 762; *United States v. Anzalone, supra,* 766 F.2d at 682; *contra United States v. Cook, supra,* 745 F.2d at 1316 (because a person of ordinary intelligence would be on notice that [such] conduct was prohibited by the statute, 31 U.S.C. § 5313 is not unconstitutionally vague as applied to defendant).

The government contends that prior Second Circuit precedents interpreting section 2(b) liability are dispositive of this issue in the absence of explicit Second Circuit authority on the Bank Secrecy Act. The government cites *United States v. Ruffin,* 613 F.2d 408 (2d Cir.1979) and *United States v. Margiotta,* 688 F.2d 108 (2d Cir. 1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983) for the proposition that Perlmutter can be liable for causing an innocent intermediary, in this case the bank, to commit a criminal act, although only the bank had a reporting duty under the relevant statute. In *United States v. Ruffin, supra,* the defendant was convicted for causing a local community organization to fraudulently obtain funds from the office of Economic Opportunity, chartered pursuant to the Economic Opportunity Act of 1964, 42 U.S.C. § 2701 et seq. The defendants scheme was carried out through the acts of a director of the intermediary agency receiving the federal funds, who was not convicted under the statute. In construing section 2(b) to permit a criminal conviction for causing the intermediary to violate the Economic Opportunity Act (which only the officer of the agency had the capacity to violate) the court observed:

The guilt or innocence of the intermediary, therefore, becomes irrelevant in determining whether a person charged as a co-principal under § 2(b) may be found guilty ... The issue before us, therefore, narrows down to whether one who would be incapable of violating that law if he acted alone (i.e., Ruffin) may nevertheless be found guilty where he causes the prohibited conduct to be committed by another who has the capacity to violate it ... but who has been acquitted. We are persuaded that such a "causer" may be found guilty under § 2(b).

The Second Circuit applied the same "causer" principles in *United States v. Margiotta, supra,* to hold that Margiotta, the chairman of the Nassau and Hempstead Republican parties, was guilty of causing an innocent elected town official to appoint a preselected town insurance broker who would effectuate a kickback scheme in insurance payments. The Circuit Court held that although Margiotta was not directly guilty of extorting moneys pursuant to the Hobbs Act, 18 U.S.C. § 1951, as it proscribes extortion "under color of official right," 18 U.S.C. § 1951(b)(2), Margiotta could be convicted for causing the intermediary to commit the crime. Construing section 2(b) the court stated:

This section is based on the precept that an individual with the requisite criminal intent may be held liable as a principal if he is a cause in fact in the commission of a crime, notwithstanding that the proscribed conduct is achieved through the actions of innocent intermediaries ...

.     .     .     .     .

It is unnecessary that the intermediary who commits the act have a criminal intent.

*Id.* at 131.

While the *Ruffin* and *Margiotta* cases bear a skeletal resemblance to the issue at hand, the reasoning which applies the circumstances of these prior § 2(b) cases to the Bank Secrecy Act fails for the same reason as the government's "intent" analy-

sis above. In both *Ruffin* and *Margiotta,* the Second Circuit *assumed* the criminality of the ultimate acts of fraud and extortion respectively: indeed the criminality of those ultimate acts was not disputed; rather it was the innocence of the intermediary which gave concern to the Second Circuit when applying the section 2(b) analysis. The same cannot be said for applying this analysis to the case at bar. The rationale of *Ruffin* and *Margiotta* appears to assume the criminality of the ultimate act of the innocent intermediary, the precise issue which according to *Anzalone* cannot be established under this statutory scheme. By retroactively recharacterizing these transactions as transactions which would have violated the Bank Secrecy Act, the government is able to impute "criminal intent" to Perlmutter where she had no duty to file CTRs in the first place. In essence, this projection of prior section 2(b) analysis leaps over the central question of whether avoidance behavior or the structuring of deposits was criminal at all under the Treasury regulations then in effect.

In short, the question unearthed by the *Anzalone* court is, regardless of Perlmutter's intent, whether she had notice that this avoidance behavior would subject her to criminal penalties. Answering in the negative, the First Circuit analysis places the notice dilemma in its constitutional context, and in this court's opinion displaces the less searching analysis of the *Thompson* and *Tobon-Builes* courts. Perlmutter's motion is granted, and counts one through eight of the indictment are therefore dismissed.

IT IS SO ORDERED.