**UNITED STATES of America, Plaintiff,**

**v.**

**Raul E.
PEÑAGARICANO–SOLER, Defendant.**

**Crim. No. 85–0210CC.**

United States District Court,
D. Puerto Rico.

Sept. 8, 1986.

Daniel F. López-Romo, U.S. Atty., by E.M. De Jesús, Trial Atty., Chris K. Gober, Trial Atty., Dept. of Justice, Hato Rey, Puerto Rico, for plaintiff.

Harry Anduze-Montaño, Santurce, Puerto Rico, for defendant.

## ORDER

CEREZO, District Judge.

Defendant Raul E. Peñagaricano-Soler has been charged in a thirty-five count indictment with violations, either as principal or aidor and abettor, of 31 U.S.C. sections 5313 and 5322(b) and their regulations (failure to report currency transaction in excess of $10,000); 18 U.S.C. section 1006 (making false entries with intent to defraud the United States by officer of federally insured financial institution), and 18 U.S.C. section 371 (conspiracy to violate the currency transaction reporting statute). On February 21, 1986, he requested dismissal of the indictment charging that 31 U.S.C. 5313, 5322(b) and the regulation, 31 C.F.R. section 103.11, are unconstitutionally vague. His position is based on the recent decision of the First Circuit in *United States v. Anzalone,* 766 F.2d 676 (1985). In its omnibus reply filed March 3, 1986 the government argues that the *Anzalone* decision is distinguishable and that not all the counts are for violations of the currency reporting statutes and regulations. As the government has correctly noted, counts 3,

6, 8, 10, 12, 14, 17 and 29 are based on violations to 18 U.S.C. section 1006 while the remaining 27 counts have to do with violations to 31 U.S.C. sections 5313, 5322(b) and 31 C.F.R. 103.11. Since defendant has not argued that 18 U.S.C. 1006 is unconstitutionally vague, we consider his motion as addressing only the 27 counts dealing with violations to the currency transaction reporting statutes.

■■■ A penal statute is unconstitutionally vague if it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The statute must give a person of ordinary intelligence "a reasonable opportunity to know what is prohibited," *id.*; *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) and must be sufficiently specific so as not to encourage arbitrary and discriminatory enforcement. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. The statute in question, 31 U.S.C. 5313(a), provides in its pertinent part that "[w]hen a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coin or currency ... in an amount ... or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes." *Id.* The regulation referred to in the statute impose the duty to file the currency transaction report only upon financial institutions. 31 C.F.R. 103.22. "(a) Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000." *Id.*

In *United States v. Anzalone,* 766 F.2d 676, the court found that the statute and the regulation were unconstitutionally vague because they did not make defendant Anzalone, a bank customer who purchased several checks totalling $100,000, none of which exceeded $10,000 individually, aware that his conduct was prohibited. The court concluded that the self-imposed limitation, included by the Secretary in the regulation, upon the original power granted to the Secretary in Section 5313(a) which allowed him to require other 'participants' and not just financial institutions to file the reports, would, at the least, cause "confusion in the minds of 'other participants in the transaction,' and even more likely lead them to conclude that they had been excluded from its affirmative duties." *Id.* at 681. Other courts have also upheld constitutional due process challenges to the Currency Transaction Reporting Act and its regulations on grounds of vagueness. *See United States v. Larson,* (to be reported at) 796 F.2d 244 opinion rendered July 22, 1986 (8th Cir.); *United States v. Reinis,* 794 F.2d 506, 508 (9th Cir.1986); *United States v. DeLa Espriella,* 781 F.2d 1432, 1435 (9th Cir.1986); *United States v. Denemark,* 779 F.2d 1559, 1563–62 (11th Cir. 1986); *United States v. Varbel,* 780 F.2d 758 (9th Cir.1986). There seems to be some disagreement however, on whether a bank customer may be charged under the aiding and abetting statute, 18 U.S.C. section 2,[1] to have "caused" the financial institution to fail to file the report, when the customer makes a series of transactions, each less than $10,000 but totalling more than the statutory amount. Some courts hold that, if the transactions are made in a single day at the same bank or any of its branches, this would amount to a "structured" transaction in violation of the regulations, making the aidor or instigator as culpable as the financial institution, *see United States v. Giancola,* 783 F.2d 1549, 1553 (11th Cir.

---

1. Said statute indicates:
"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as principal."

1986); others contend no such duty to report "structured" transactions on the part of the financial institution has been imposed by formally adopted regulation and there is no violation on the part of the aidor, *see Reinis*, 794 F.2d at 508, while still others hold that if the financial institution was unaware that the customer was structuring the transactions it did not have to file the report and there is no wrongdoing which the aidor can be said to have caused, *see Larson*, 796 F.2d 244. Whatever may be the ultimate disposition of this issue should the matter ever be considered by the Supreme Court, it is clear that in the present case the counts in this indictment cannot be dismissed on these grounds.

 At this stage we must limit our analysis to the terms of the indictment, *see United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–75, 9 L.Ed.2d 136 (1962). Defendant Peñagaricano-Soler was, at all times pertinent to the charges, the President of Caribbean Federal Savings, a financial institution within the meaning of the Act that was charged in a separate case and which pleaded guilty. As the First Circuit recognized in *Anzalone* when distinguishing—not rejecting, as the court did with the other cases that interpreted the statute by using the substance-over-form approach *id.*, at p. 683—*United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979), the challenge to the statute takes on an entirely different bearing when the person charged is not a customer, as was the case in these decisions, but the President of the financial institution himself. Such high officer, like the chairman in *Thompson*, "owed the bank a fiduciary and legal duty to disclose the nature of this transaction...." *Anzalone*, 766 F.2d 683. In addition, Mr. Peñagaricano-Soler, as the bank's leading officer, may be held criminally liable for the bank's crimes if he actively and knowingly participated in the unlawful activity. *See United States v. Amrep Corp.*, 560 F.2d 539, 545 (2d Cir.), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978). It should also be noted that the transactions he is charged with failing to report are not the usual less-than-$10,000 ones involved in the cases discussed. The money laundering scheme Mr. Peñagaricano-Soler is accused of involves more than twenty-five different transactions on separate days within a time frame of almost three years and amounting to more than a million dollars. All of the separate transactions, as charged in the indictment, exceed the $10,000 statutory limit.[2] Finally, the large amount of money involved makes the provision of 31 U.S.C. 5322(b) (pattern of illegal activity involving transactions of more than $100,000 in a twelve-month period) come into play and thus further distinguishes this case from the above-mentioned caselaw. *See United States v. Heyman*, 794 F.2d 788 (2d.Cir.1986). We hold that under the circumstances of this case the statute and regulations are sufficiently specific to give defendant a reasonable opportunity to know that the conduct he is charged with was prohibited. *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298; *Lanzetta*, 306 U.S. at 453, 59 S.Ct. at 619. Accordingly, defendant's motion to dismiss the indictment because of

---

**2.** The indictment charges that Mr. Peñagaricano-Soler failed to report or caused the bank to fail to report the following transactions:

| | | |
|---|---|---|
| Count II | — on October 28, 1982: | $218,750.00 |
| Count IV | — on November 1, 1982: | $ 70,000.00 |
| Count V | — on November 4, 1982: | $162,000.00 |
| Count VII | — on December 3, 1982: | $100,000.00 |
| Count IX | — on December 18, 1982: | $260,000.00 |
| Count XI | — on May 2, 1983: | $ 26,762.50 |
| Count XIII | — on October 20, 1983: | $115,000.00 |
| Count XV | — on December 20, 1983: | $120,000.00 |
| Count XVI | — on April 11, 1984: | $ 51,750.00 |
| Count XVIII | — on May 7, 1984: | $ 29,840.00 |
| Count XIX | — on May 7, 1984: | $100,000.00 |
| Count XX | — on May 14, 1984: | $ 20,000.00 |
| Count XXI | — on July 16, 1984: | $ 50,000.00 |
| Count XXII | — on September 11, 1984: | $ 50,000.00 |
| Count XXIII | — on October 2, 1984: | $ 50,000.00 |
| Count XXIV | — on October 11, 1984: | $125,000.00 |
| Count XXV | — on October 26, 1984: | $ 50,000.00 |
| Count XXVI | — on October 27, 1984: | $ 10,893.47 |
| Count XXVII | — on October 27, 1984: | $ 15,000.00 |
| Count XXVIII | — on February 1, 1985: | $125,000.00 |
| Count XXX | — on March 1, 1985: | $125,000.00 |
| Count XXXI | — on March 12, 1985: | $135,000.00 |
| Count XXXII | — on March 25, 1985: | $ 80,000.00 |
| Count XXXIII | — on April 15, 1985: | $ 30,000.00 |
| Count XXXIV | — on May 1, 1985: | $ 45,000.00 |
| Count XXXV | — on May 28, 1985: | $ 65,000.00 |

the unconstitutionality of the statute on grounds of vagueness is hereby DENIED.

SO ORDERED.