UNITED STATES of America, Appellee,

v.

Edward HOLMES, Appellant.

UNITED STATES of America, Appellee,

v.

David Charles AUMENT, a/k/a Dave Auman, Appellant.

UNITED STATES of America, Appellee,

v.

Vera Lynn AUMENT, Appellant.

Nos. 82–5320 to 82–5322.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 1, 1983.

Decided Nov. 14, 1983.

John Kenneth Zwerling, Alexandria, Va. (Michael S. Lieberman, Alexandria, Va., on brief), for appellant, David Aument.

Marvin D. Miller, Alexandria, Va., on brief, for appellant, Vera Aument.

Tommy E. Miller, Asst. U.S. Atty., Norfolk, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Edward Holmes, David Charles Aument and Vera Lynn Aument were convicted of conspiring, in violation of 21 U.S.C. § 846, to distribute cocaine and to possess cocaine with the intent to distribute. In addition, Holmes and Vera Aument were each convicted of one substantive distribution count and David Aument was convicted of two substantive distribution counts. Holmes and the Auments were indicted together with certain unidentified co-conspirators and Robert W. Dodd. On the day of trial, Dodd pleaded guilty, but not until the second day of the three-day trial was it made known to defense counsel that he would not be called as a government witness.

In these consolidated appeals, defendants contend that there were numerous reversible errors. They principally assert (1) that they were erroneously denied particulars of a vague indictment, (2) that their rights under the Jencks Act, 18 U.S.C. § 3500, were violated, (3) that their right to disclosure of exculpatory data in the possession of the government was violated, (4) that the foreman of the grand jury which indicted them was improperly selected, and (5) that there was legally insufficient evidence to convict them. There are also subsets of contentions within these principal ones.

We conclude that defendants must be awarded a new trial because of the violation of their rights under the Jencks Act. Because of this conclusion, we need not consider all of defendants' remaining con-

William B. Moffitt, Arlington, Va. (Nina J. Ginsberg, J. Flowers Mark, Alexandria, Va., on brief), for appellant, Holmes.

tentions, and those that we reach, we find lacking in merit.

We reverse the judgments of convictions and award each defendant a new trial.

## I.

The charges in this case evolve from the defendants' relationship with Harry Robert Creta. Creta was a cocaine dealer in partnership with Robert Dodd. Creta sought to interest David Aument in the purchase of cocaine, and Creta stole $20,000 of Aument's money by arranging for his phony arrest at the Norfolk International Airport. Aument then introduced defendant Holmes to Creta in an effort to recover his money. Holmes' efforts at collection were unsuccessful, but then Creta persuaded David and Vera Aument to distribute cocaine for him so that David's loss might be recouped. At least twice a week from approximately September or October, 1978, to about February or March, 1979, Creta supplied cocaine to the two Auments.

The government presented ample proof that the two Auments had entered the cocaine business. Gail Baker, who guarded Creta's cocaine and assisted in distributing it, testified to making three deliveries to Vera. Anthony Mirabile, Creta's chauffeur and errand runner, twice took Creta to the home of the Auments and overheard Vera describe an incident in which she had cocaine on her face and hands. Creta's wife, who had assisted in David's phony arrest, was present a number of times when Creta delivered cocaine to the Auments, received money and discussed the cocaine business.

Two customers of the cocaine business described how they would receive deliveries, the price they would pay and how Vera supplied them with a substance to cut the cocaine and taught them the procedure to be followed. These customers, the Auments and defendant Holmes used cocaine when they were together on social occasions and Holmes participated in collecting monies owed by one customer to David for a cocaine transaction.

We will refer to other facts in connection with the contentions to which they are pertinent.

## II.

The indictment in the instant case is extremely vague as to times, people and places. Most of the overt acts and most of the substantive counts allege acts "on or about" a certain *month,* list only a city or even a judicial district where they occurred, and none name, with respect to any transaction, a buyer, but only say an "unindicted co-conspirator." Defendants all sought particulars of the indictment. Their requests were largely denied. The district court ruled that the government must provide more specific dates *if* it could possibly do so, and must identify places to the extent that the places were public, rather than private. The district court denied any other information, ruling that this would serve only to expose the government's witnesses, rather than to apprise defendants of the charges against them. Defendants assert, and the government does not deny, that they were furnished not one single additional date or location in compliance with the district court's order.

We have little doubt that this indictment provided defendants with only the minimum notice of the charges against them required by due process. At the same time the vagueness of the testimony of the government's witnesses at trial with respect to dates satisfies us that the government was not proceeding in bad faith when it made allegations lacking specificity and when it asserted an inability to furnish greater particularity.

In all, we do not think that the indictment was so vague as to deny procedural due process of law nor do we think that the district court abused its discretion in failing to require more particulars. The limited notice of the specifics of the charges against them, while not constituting reversible error in itself, is, however, a factor which must be considered when we next turn to the contention that defendants' rights under the Jencks Act were violated.

### III.

In addition to seeking bills of particulars as to the indictment, defendants invoked the panoply of discovery devices available in criminal cases. Most of defendants' efforts to obtain discovery were denied, although it was agreed or ordered (the record is not clear which) that defendants would be furnished with Jencks Act materials the day before trial so as to permit counsel to be prepared to cross-examine government witnesses.

The trial, which consumed three full days, began on Monday, October 18, 1982. The preceding day, Sunday, October 17, at 10:00 a.m., the government furnished defendants' counsel with Jencks Act material. As described in defendants' brief, and not disputed by the government, the material was a stack of paper at least eight inches thick, including a thousand pages of testimony obtained from ten witnesses, a forty-five minute tape recording and other documents. Defendants assert, and again the government does not dispute, that it took an experienced attorney twenty-four hours to read through this material once in preparation for this appeal.

The government completed the direct examination of its first witness, Creta, late in the afternoon of the first day of trial. One of the lawyers for the defense requested the district court to adjourn for the day on the dual grounds that the lawyer felt unwell and that counsel had not sufficiently completed their study of the Jencks material so as to be prepared to cross-examine. The district court ruled that if the lawyer was unwell, co-counsel could cross-examine and since the Jencks material had been furnished the day before, when under a strict interpretation of the Act it need not have been furnished until the witness had completed his direct testimony, the district court would give counsel only a five-minute recess before cross-examination would begin.* The requested adjournment was denied and cross-examination of Creta began. The court remained in session until the

cross-examination, redirect and recross-examination of Creta were completed. The jury was excused at 6:51 p.m. and the court adjourned at 7:06 p.m.

Defendants contend that they were effectively denied their rights under the Jencks Act both with respect to the witness Creta and all other government witnesses. The government responds by arguing that it complied with its undertaking (or the court order) by supplying the Jencks Act material at the appointed time and that defendants' counsel made no similar motion for preparation time when subsequent government witnesses testified nor did they voice any other objections to the immediate beginning of cross-examination.

██ We think that defendants' contention is meritorious. Of course, the Jencks Act does not require that the statement of a government witness be produced for the use of a defendant until the witness has testified. Many times, however, in cases where there are many statements or where the bulk of witness statements is large, the government will agree, or it may even be ordered, to deliver material at an earlier time so as to avoid lengthy delays before the beginning of cross-examination. This accommodation is often made because of the requirement of the Act, 18 U.S.C. § 3500(c), that

> Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

██ Thus the Jencks Act contemplates not only the furnishing of the statement of a witness but a reasonable opportunity to examine it and prepare for its use in the trial. That the statements in this case were furnished according to the original undertaking, as the government contends, only

---

* In fact, counsel were given a sixteen-minute recess. The record shows that the recess began at 4:40 p.m., and the jury did not return to the jury box until 4:56 p.m.

begs the ultimate question. Here it is clear that defendants were not afforded a reasonable opportunity to examine and digest the mass of material furnished them on the Sunday before the Monday that the trial began. Especially is this so because, as we have stated, defendants had only the minimum notice that due process requires of the charges against them. Their need for careful study of Jencks Act materials was greater than in the usual case where greater specificity of the charge is alleged. It was therefore an abuse of discretion on the part of the district court to deny a reasonable delay in the progress of the trial to permit counsel to complete their studies and preparation.

Of course, the case would be easier had defendants renewed their request for time for preparation for cross-examination after each government witness testified. Had they done so, the government would have no basis to argue that they failed to preserve their objections. Nonetheless, we do not think that there was a waiver. The objection to proceeding with the cross-examination of Creta was unmistakable; the request was denied at 4:40 p.m. in no uncertain terms; and the district judge had already indicated annoyance at being asked to make repetitive rulings. It seems clear to us that counsel quite reasonably could have concluded that further requests also would be denied and that, in the interest of their clients, it was better trial strategy not to renew the request with each witness and thereby to risk incurring the displeasure of the district judge.

We hold that on the facts of this case, the district court abused its discretion and denied defendants' rights under the Jencks Act. This denial of defendants' rights vitiates the judgments of conviction and warrants a new trial.

### IV.

In the light of our conclusion that defendants must be tried anew, their other contentions about violations of the Jencks Act and the *Brady* rule, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), fall by the wayside. Most of defendants' claims are premised on the fact that possibly exculpatory material was furnished late and in such bulk that they reasonably could not assimilate it in time to use it effectively. In a new trial that premise will not exist.

We add, however, that we think that the district court was correct in ruling that it had no obligation to conduct a general *Brady*-rule in camera search through the files of the prosecutor when the prosecutor had assured the district court that all possibly exculpatory material had been produced. Of course it would be the prosecutor's obligation to submit any material to the district court in camera if he had any doubts about whether it might be exculpatory. The district court, however, generally does not know the government's theory of the prosecution nor what possible defense might be available to defendants, and thus it is unlikely that it would recognize in a general in camera search anything but the most obviously exculpatory data.

### V.

We reject defendants' contention that they were improperly denied the opportunity to demonstrate discrimination in the selection of grand jury foremen. We recently have held that the position of the foreman is purely ministerial and that any discrimination in his selection is without constitutional significance. *See United States v. Hobby,* 702 F.2d 466 (4 Cir.1983).

### VI.

Finally, we are satisfied from our study of the record that the evidence was legally sufficient to convict all defendants on all counts in which they were named. We are cognizant that defendants' arguments on this point challenge the correctness of a number of the district court's evidentiary rulings, but we perceive no error in them.

We note especially, in assaying the sufficiency of the evidence, that the district court correctly ruled that an alleged co-conspirator can be guilty of the substantive

offense of distribution of cocaine to another co-conspirator. *See United States v. Wright,* 593 F.2d 105 (9 Cir.1979).

REVERSED; NEW TRIAL GRANTED.

