**UNITED STATES of America, Plaintiff,**

**v.**

**John T. RISK, Defendant.**

**Cause No. IP 86–106–CR.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 9, 1987.

---

U.S. Atty., Indianapolis, Ind., for plaintiff.

Don A. Tabbert, Philip R. Melangton, Jr., Indianapolis, Ind., for defendant.

ENTRY

BARKER, District Judge.

This matter is before the court on the following ten motions filed by the defendant: 1) the motion for an evidentiary hearing on all other motions, 2) the request for oral argument on all other motions, 3) the request for notice of the Government's intention to use any evidence that is discoverable under Rule 16 of the Federal Rules of Criminal Procedure, 4) the motion to produce, 5) the motion to dismiss, 6) the motion for a bill of particulars, 7) the motion to suppress evidence, 8) the motion for discovery and inspection, 9) the motion for disclosure of *Brady* information or, alternatively, the motion for in camera inspection of such information, and 10) the motion to continue the February trial date. The motions have been fully briefed by the parties.

The court, being duly advised in the premises, now 1) DENIES IN PART and GRANTS IN PART the motion for an evidentiary hearing, 2) DENIES the request for oral argument, 3) DENIES for mootness the request for notice of intent to use Rule 16 evidence, 4) DENIES the motion to produce, 5) GRANTS IN PART and DENIES IN PART the motion to dismiss, 6) DENIES IN PART and GRANTS IN PART the motion for a bill of particulars, 7) withholds a ruling on the motion to suppress, pending an evidentiary hearing, 8) DENIES the motion for discovery and inspection, 9) DENIES the motion for disclosure of *Brady* information and the alternative motion for in camera inspection of such information, and 10) DENIES the motion for continuation of the February trial date.

The reasons for the court's rulings are set forth in the attached memorandum.

*Memorandum*

I. *Background*

On October 3, 1986, the Grand Jury indicted the defendant, John T. Risk, for

twice failing to file currency transaction reports and willfully aiding, inducing, and causing the failure to file those reports, for twice knowingly and willfully concealing a material fact from the Internal Revenue Service, and for making a false entry in a bank statement with intent to defraud the bank. The indictment charges the defendant with those violations in five separately enumerated counts.

From the briefs submitted by the parties, it appears that the charges are based at least partially on the following facts: On December 5, 1985, a person who called himself Steven Baker, but who in fact was Special Agent Steve Weida of the Internal Revenue Service (hereinafter referred to as "Baker"), entered the main branch of Merchants National Bank. Baker presented a check drawn on Merchants National Bank by Raffensperger, Hughes & Co., Inc., and payable to Steven A. Baker in the amount of $58,677.33 to be cashed. Baker was given $9,677.33 in currency and five cashier's checks for $9,800.00 each. Baker than cashed each of those cashier's checks at five other branches of Merchants National Bank on that same calendar day.

Similarly, on December 24, 1985, the same Steven A. Baker entered the main branch of Merchants National Bank and wrote a check on his own account payable to "cash" in the amount of $15,000.00. Baker was given $9,000.00 in currency and a cashier's check for $6,000.

There is no indication in the present record of what specific role the defendant, John T. Risk, played in these transactions. For example, the court has no knowledge of the defendant's position at the bank or the defendant's knowledge of the specific transactions conducted by Baker. However, because these facts are unnecessary to resolve the pending motions, the court now turns to the motions and discusses each of them in turn.

## II. *Discussion*

### A. *Motion for Evidentiary Hearing*

The defendant moves the court for an evidentiary hearing on all of the other motions. The Government did not respond to this motion. The court concludes that an evidentiary hearing would not be helpful in resolving most of the motions, but is required in resolving the motion to suppress. Therefore, the court DENIES this motion as an independent request, but GRANTS the motion for an evidentiary hearing with respect to the motion to suppress. The motion to suppress is discussed in more detail below.

### B. *Request for Oral Argument*

The defendant requests an opportunity to orally argue the pre-trial motions he has submitted. The Government did not respond. The court concludes that oral argument would not be helpful in resolving the motions; therefore, the defendant's request is DENIED.

### C. *Request for Notice Regarding Rule 16 Information*

The defendant requests that the Government give notice of its intention to use any evidence that the defendant may be entitled to discover under Rule 16 of the Federal Rules of Criminal Procedure. The defendant further requests that the Government specify and identify every item of evidence that it intends to use in its case in chief.

In response, the Government states that it has provided, and is continuing to provide, available material that is discoverable under Rule 16. The Government has also put the defendant on notice that all such material may be offered into evidence at trial.

In reply, the defendant provides no authority suggesting that the Government's response is inadequate, but merely asserts that a specific listing of each evidentiary item is "vital and important to his receiving a fair trial." The court holds to the contrary, finding that the Government's response fully satisfies the requirements of Rule 16. Therefore, the defendant's request for Rule 16 information and materials is DENIED for mootness, and the request for additional specificity on the part of the Government is overruled.

## D. *Motion to Produce*

■ The defendant moves the court for an order requiring the Government to produce grand jury transcripts of likely Government witnesses, investigative reports from such witnesses, and grand jury transcripts and investigative reports from other persons that relate to evidentiary and factual matters that can be used by the defendant in his case in chief. In support of the motion, the defendant acknowledges that there is no requirement under the Jencks Act or the Federal Rules of Criminal Procedure requiring the Government to produce the requested information before any witness has testified. However, the defendant argues the pre-testimony disclosure is appropriate in this case because "the quantity of documents is very substantial" and because disclosure would be consistent with the spirit of the decision in *United States v. Holmes*, 722 F.2d 37 (4th Cir.1983).

In response, the Government asserts that all transcripts and investigative reports will be provided in due course and in compliance with the Jencks Act and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). And, in reply, the defendant argues that an assurance that material will be provided in "due course" is not sufficient to give the defendant confidence that the material will ever be produced.

The Jencks Act is clear:

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a) (1982). This language leaves no room for judicial compulsion of pre-trial discovery of Jencks Act material. The Supreme Court stated as much in *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959): "[t]he detailed particularity with which Congress has spoken has narrowed the scope for needful judicial interpretation to an unusual degree. The statute clearly defines procedures and plainly indicates the circumstances for their application." *Id.* at 349, 79 S.Ct. at 1223. Thus, the court denies deny the defendant's motion to produce the materials before trial.

The case cited by the defendant, *United States v. Holmes*, 722 F.2d 37 (4th Cir. 1983), is consistent with this decision. In *Holmes*, the defendants were charged with conspiring to distribute cocaine and to possess cocaine with the intent to distribute. The defendants sought to obtain Jencks Act materials before the trial, and the district court ordered the material to be produced the day before trial. When produced, the material turned out to be "a stack of paper at least eight inches thick, including a thousand pages of testimony obtained from ten witnesses, a forty-five minute tape recording and other documents." 722 F.2d at 40. The defendants were given a sixteen minute recess following the testimony of the Government's first witness on the first day of trial, before being required by the court to begin cross-examination. The defendants were convicted on all counts.

The Court of Appeals reversed the convictions, concluding that the defendants were denied their rights under the Jencks Act, stating that "the Jencks Act contemplates not only the furnishing of the statement of a witness but a reasonable opportunity to examine it and prepare for its use in the trial." *Id.* at 40.

The *Holmes* decision could lead one to conclude that, in cases where the material being produced is voluminous, it should be produced more than one day before trial. The *Holmes* court did state: "In cases where there are many statements or where the bulk of witness statements is large, the government ... may even be ordered to deliver material at an earlier time so as to avoid lengthy delays before the beginning of cross-examination." *Id.* at 40.

However, such a conclusion is unwarranted when this language from *Holmes* is considered in context. Immediately before

the above-quoted excerpt, the *Holmes* court wrote, "Of course, the Jencks Act does not require that the statement of a government witness be produced for the use of a defendant until the witness has testified." *Id.* The court continued: "Many times, however, in cases where there are many statements or where the bulk of witness statements is large, the government will agree, or it may even be ordered, to deliver material at an earlier time so as to avoid lengthy delays before the beginning of cross-examination." *Id.*

Thus, the passage suggests that, in certain cases, the government could voluntarily produce material before it was required to do so in order to avoid lengthy delays before cross-examination. The "may even be ordered" language is not further explained and thus appears to be something of an overstatement by the court because it is so clearly contradictory to the language of the statute. In any event, the primary import of this decision is that whenever disclosure occurs, the defendant is entitled to enough time for meaningful examination of the material.

This conclusion, drawn from the *Holmes* court's reversal of the district court, assures the defendant a reasonable opportunity to examine material once it is produced. This court can make the same assurances without having to grant defendant's motion for pretrial disclosure. Obviously though, if lengthy delays are to be avoided in this case, assuming that the material to be produced is voluminous, the government will have to voluntarily produce the material earlier than the statute requires.

For all the foregoing reasons, the defendant's motion to produce is DENIED.

### E. *Motion to Dismiss*

■ The defendant moves the court to dismiss the indictment on several grounds. Each of those grounds is discussed below.

#### 1. *Constitutionality of 31 U.S.C. § 5313 and 31 C.F.R. § 103.22*

The defendant first argues that 31 U.S.C. § 5313 and 31 C.F.R. § 103.22 are unconstitutional in that they are vague, indefinite, and uncertain and that they fail to give notice and fair warning of that which they seek to prohibit. In support of his argument, the defendant discusses at great length decisions from various federal circuit courts of appeals. Essentially, the defendant's view is that the circuits are split on the question of whether a currency transaction report must be filed in instances involving multiple transactions which, though individually amount to less than $10,000.00, together total more than $10,000. Given the split of opinion among the circuits, the defendant asserts that it would be unreasonable and, indeed, unconstitutional to require individuals to know whether filing is required.

In response, the Government argues that the "split in the circuits" is illusory because the cases can be reconciled by a close, careful review of their facts. Moreover, the Government cites several decisions of courts that have allegedly held the statute and regulations in question here to be constitutional: *California Bankers Assoc. v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *United States v. Dichne*, 612 F.2d 632 (2d Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980); *United States v. Fitzgibbon*, 576 F.2d 279 (10th Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978).

In his reply, the defendant challenges the Government's factual distinctions made with respect to the original authorities cited by the defendant, and reasserts his view that the statute and regulations, by themselves, provide insufficient notice of the prohibited conduct. Thus, the issue before the court is whether 31 U.S.C. § 5313 (1982) and 31 C.F.R. § 103.22 (1985) are so vague as to be unconstitutional.

Unfortunately, the question has not been considered and conclusively answered by the Supreme Court, nor has the Court of Appeals for the Seventh Circuit offered its assessment. The decisions cited by the Government, upholding the constitutionality of the statute, were based on other constitutional grounds. *California Bankers*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d

812 (1974) (upholding the provisions against first amendment, fourth amendment, and fifth amendment challenges—the fifth amendment challenge asserting a denial of the right against self-incrimination); *Dichne,* 612 F.2d 632 (2d Cir.1979) (upholding the provisions against a fifth amendment selfincrimination challenge); *Fitzgibbon,* 576 F.2d 279 (10th Cir. (1978) (upholding the provisions against first and fourth amendment challenges).

Finding no cases directly on point, the court turns its consideration to the statutory language, itself. If the language is clear, the court need go no further in its analysis.

Section 5313 of the Currency Transaction Reporting Act, 31 U.S.C. § 5313 (1982), provides:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

Clearly, the statute provides that the Secretary of the Treasury may require financial institutions or any other participant in a currency transaction to file a report. The Secretary's implementing regulations require that:

> Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary ... and all information called for in the forms shall be furnished....

31 C.F.R. § 103.22(a) (1985). In addition, the Secretary defines a transaction in currency as:

> A transaction involving the physical transfer of currency from one person to another. A transaction which is a transfer of funds by means of bank check, bank draft, wire transfer, or other written order, and which does not include the physical transfer of currency is not a transaction in currency within the meaning of this part.

31 C.F.R. § 103.21 (1985). Thus, only financial institutions, not other participants, have a duty to file currency transaction reports ("CTR's"); moreover, CTR's need only be filed regarding transactions meeting the above definition.

This brief review of the statutory language manifests a need to inquire further. That is, the plain meaning of the regulations that implement the statute does not clearly encompass the situation presented by the facts of the instant case. There is no mention in the statute or regulations of what is or is not required of financial institutions regarding "structured" transactions or regarding multiple transactions by one individual at different branches of a financial institution on a single day.

Unfortunately, the legislative history of the statute also does not provide any clear guidance regarding the limits of the proscribed conduct. The House Judiciary Committee Report fails to elaborate on the provisions enacted in section 5313, and the testimony at the time of passage of the legislation as recorded in the Congressional Record is similarly silent. See H.R.Rep. No. 97–651, 97th Cong., 2d Sess. 1895 (1982), U.S.Code Cong. & Admin.News 1982, p. 1895; 128 Cong.Rec. H5452 (daily ed. August 9, 1982); 128 Cong.Rec. S11059 (daily ed. August 20, 1982).

The lack of clarity surrounding the proscribed conduct is further evidenced by a review of the judicial decisions from which each side argues. The brief summaries of these cases, provided below, reveal not only that courts have disagreed but that reason-

able people could also disagree as to the plain meaning and scope of the statute and its corresponding regulations. The cases are numerous; the primary authorities are discussed below in chronological order to provide greater analytical clarity.

First, in 1979, the Fifth Circuit decided *United States v. Thompson*, 603 F.2d 1200. At trial, George Thompson, a bank director, was found guilty of unlawfully causing the bank to fail to file a currency transaction report (CTR). Thompson had intentionally broken a $45,000 loan transaction into five $9,000 components to avoid the necessity of filing a CTR. The five separate notes were processed personally by Thompson, and Thompson delivered the five, $9,000–bundles of cash at one time to the bank's customer. Thompson was convicted and appealed arguing, among other things, that the statute and regulations under which he was prosecuted were unconstitutionally vague as applied to him.

The Fifth Circuit rejected the argument stating that 31 U.S.C. § 1081 and 31 C.F.R. §§ 103.21(a) and 103.11 afforded Thompson "fair notice of what constitutes a 'transaction in currency of more than $10,000,'" particularly "where these loans were executed by the same borrower, on the same day, in the same bank, and where the proceeds of the loans totalling in excess of $10,000.00 were physically transferred by the financial institution to the borrower at the same time and place." 603 F.2d at 1203.

Next, in 1983, the Eleventh Circuit decided *United States v. Tobon–Builes*, 706 F.2d 1092. Oscar de J. Tobon–Builes was convicted of using a trick, scheme, or device to conceal and cover up and to cause to be concealed and covered up, material facts in a matter within the jurisdiction of the Department of the Treasury in violation of 18 U.S.C. § 1001. Over a six-hour period, Tobon and his companion went to ten banks and at each bank, each made a virtually simultaneous cash purchase of a cashier's check. The two transactions totaled approximately $18,000, yet each individual check had a face value of less than $10,000. The scheme was devised to escape the bank's required filing of a CTR for cash transactions exceeding $10,000. Each set of two purchases occurred on the same day at each financial institution. Tobon admitted that his use of false names and his structuring of single $18,000 transactions as two $9,000 cash transfers represented a scheme to prevent the financial institutions from fulfilling their legal duty to file reports for these transactions.

On appeal, Tobon argued that he had no personal legal duty under any statute or regulation requiring him to disclose any transaction exceeding $10,000. The Court of Appeals explained, however, that Tobon's liability stemmed not from his duty to file a CTR, but from his causing the financial institutions to fail to file the required report. 706 F.2d at 1098–99. Even though Tobon was incapable of committing the crime of concealment himself because he lacked a statutory duty to file a CTR, Tobon was liable pursuant to 18 U.S.C. § 2(b): "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 706 F.2d at 1099–1100.

In 1984, another court considered the issues surrounding the CTR requirements. In *United States v. Sanchez Vazquez*, 585 F.Supp. 990 (N.D.Ga.1984), the defendants were charged with, among other things, willfully and knowingly causing certain enumerated financial institutions to fail to file CTR's. The defendants argued that they could not be held criminally liable under 31 U.S.C. § 5322, because each branch of a bank at which a transaction was conducted constitutes a separate financial institution, as defined at 31 C.F.R. § 103.

The court rejected the defendants' argument, concluding "that the correct interpretation of the implementing regulations in defining the term 'financial institution' is a bank, including each of its branches." 585 F.Supp. at 993. The court also noted that its conclusion was supported by the supplemental instructions for completing the Treasury Department's Form 4789, which state:

"If a financial institution is aware that an individual or organization has conducted a series of currency transactions in one day at the financial institution, or at different branch offices of the financial institution, totalling more than ten thousand ($10,000.00) dollars, a report should be filed for all such transactions...."

*Id.* Thus, the court denied the defendants' motion to dismiss the relevant counts of the indictment.

The defendants in *Sanchez Vazquez, supra,* also argued that 31 U.S.C. §§ 5313 and 5316 violated their fourth and fifth amendment rights. The court rejected these claims as well. With respect to the fourth amendment, the court concluded that an individual who engages in a currency transaction with a bank has no reasonable expectation of privacy that is protected by the amendment. With respect to the fifth amendment, the court concluded that the reporting requirements in the statutes are not directed at any inherently suspect group and that there is no clear nexus between the required disclosure and any potential criminal activity; therefore, the reporting requirements do not violate the fifth amendment.

In 1985, several more courts encountered similar issues. In *United States v. Anzalone,* 766 F.2d 676 (1st Cir.1985), Anzalone had purchased three checks from a bank on one date, which together totaled more than $25,000, but none of which individually exceeded $10,000. Thereafter, on separate dates spanning a two-week period, he purchased nine additional checks totalling $75,000, none of which individually exceeded $10,000. The bank did not file CTR's for any of the transactions.

Anzalone was charged with and convicted of violation of 18 U.S.C. § 1001 (which proscribes schemes to conceal, or to cause to be concealed, from the federal government a material fact) and 18 U.S.C. § 2 (which proscribes aiding, abetting, or causing a crime by another). The charges were based on Anzalone's failure to inform the bank of the structured nature of his transfers, which, it was alleged, constituted an illegal scheme to avoid detection of these payments by causing the bank to fail in its duty to report them. 766 F.2d at 679.

The First Circuit Court of Appeals reversed Anzalone's conviction, holding that he did not have forewarning that his actions and nondisclosure subjected him to criminal sanctions. 766 F.2d at 683. In so holding, the court indicated that it had reached the conclusion after having found nothing in express provisions of the statutes or regulations, or in their legislative history, to support the proposition that a structured transaction by a customer constitutes an illegal evasion of any reporting duty of that customer. 766 F.2d at 681.

In *United States v. Richter,* 610 F.Supp. 480 (N.D.Ill.1985), *aff'd sub nom., United States v. Mangovski,* 785 F.2d 312 (7th Cir.1986) (unpublished opinion), the defendants were charged with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and with violating reporting provisions of the Bank Secrecy Act, codified at 31 U.S.C. §§ 5311 *et seq.* and implemented by 31 C.F.R. § 103.11 *et seq.* Basically, federal agents posed as drug dealers and gave the defendants large sums of money to be "laundered." The defendants broke up the large sums into units of less than $10,000 each, deposited the smaller amounts into bank accounts, and eventually wired the money, less a fee, to Switzerland.

The *Richter* defendants argued that, because they did nothing to affirmatively prevent the filing of CTR's (*i.e.,* they used no subterfuge to conceal the identity or amounts of deposits), they did not cause the bank to fail to file a CTR. The court disagreed, concluding that "[h]owever 'open' the defendants' transactions were, by splitting their deposits they did allegedly manage to prevent the bank and, more importantly, the IRS, from learning that they were dealing in sums larger than $10,000." 610 F.Supp. at 489.

The *Richter* defendants also argued that the statute and regulations did not prohibit multiple deposits totalling in excess of $10,000. The court also rejected this argument, carefully explaining its flaw:

The alleged offense is intentionally causing the bank to not file a CTR. What *caused* the failure was the act of breaking up the large sums into smaller ones. Under § 2, it is *these* acts, "if directly performed by" bank officials which would violate § 5313. Defendants' argument silently assumes that the alleged crime is something else: failure to file a CTR when a depositor comes in with multiple deposits of more than $10,000. They focus on whether the bank officials had a duty to file a CTR had they known that defendants had come in with multiple deposits of more than $10,000. The defendants thus focus on a later part of [the] time line. Even if the bank had no duty to file a CTR in the multiple deposit situation, *the crime had already been committed:* the defendants had intentionally structured their transactions to evade the reporting requirements of the Act. The crime was breaking up the deposits to cause the bank to fail to file a CTR where it would have done so had the deposits not been broken up. The relevant duty—the existence of which is not disputed—is the duty of the bank to file CTRs for single deposits of more than $10,000. The defendants allegedly caused the bank not to fulfill *this duty*. The other, later "duty"—whether the bank is required to report transactions *already* broken into increments—is irrelevant here. It does not matter whether the defendants caused the bank not to fulfill this possible duty.

610 F.Supp. at 489–90 (citations omitted; emphasis in original).

Finally, the *Richter* defendants argued that the statutory scheme for imposing liability is void for vagueness. The court dispensed with this argument almost summarily, citing two other decisions in which courts had previously rejected similar arguments. 610 F.Supp. at 490.

In *United States v. Gimbel*, 632 F.Supp. 748 (E.D.Wis.1985), Stanley Gimbel, an attorney, had been charged with knowingly, willfully and intentionally concealing and covering up, and causing to do so, by trick, scheme and device, material facts within the jurisdiction of the Internal Revenue Service. Specifically, Gimbel was alleged to have concealed or disguised the fact that he deposited more than $10,000 in currency into one bank account during the course of one day and the fact that he withdrew more than $10,000 in currency from the same bank account during the course of one day.

Gimbel moved to dismiss the charge, but the motion was denied. The court quoted at length from *Richter* and adopted its analysis entirely. It agreed that the alleged offense is intentionally causing the bank to not file a CTR and that what caused the failure was the act of breaking up the large sums into smaller ones. 632 F.Supp. at 753–54. The court further stated:

> Even if the bank had no duty to file a CTR in the multiple deposit situation, *the crime had already been committed;* the defendants had intentionally structured their transactions to evade the reporting requirements of the Act. The crime was breaking up the deposits to cause the bank to fail to file a CTR where it would have done so had the deposits not been broken up.

632 F.Supp. at 754. Based on this analysis of the ordering of events, the court concluded that an offense had been stated under 18 U.S.C. §§ 2 and 1001.

The *Gimbel* court separately addressed an argument that the statutes involved (including 31 U.S.C. § 5313) did not give Gimbel fair warning that his conduct was prohibited. The court noted that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982), and asserted that the Government would have to prove at trial that Gimbel intended to cause a bank to evade, not avoid, the filing of CTR's. With this caveat, the court concluded that the statutes as applied in this case were not unconstitutionally vague.

In *United States v. Cogswell*, 637 F.Supp. 295 (N.D.Cal.1985), the defendants were charged with concealing and causing to be concealed material facts required to be reported pursuant to 31 U.S.C. § 5313 and 31 C.F.R. § 103 (the Currency Transaction Reporting Act) by causing various individuals to exchange currency in amounts less than $10,000 without filing any CTR's, thereby concealing the accurate source, origin, transfer, and existence of the currency. Specifically, the defendants had arranged for another person to buy three cashier's checks, each in the amount of $9,000, at three different banks over a two-day period.

The court dismissed the charge, concluding that the Reporting Act does not impose a duty to report transactions in amounts under $10,000 and that, as such, the defendants cannot be prosecuted for concealing material facts. After acknowledging that the various circuits are in disagreement on the issue of whether structured transactions must be reported under the Bank Secrecy Act, the *Cogswell* court apparently was persuaded by a report to Congress by the Comptroller General of the United States. *See* 637 F.Supp. at 297. The report stated that the regulations implementing the Act "were silent on the propriety of a customer's conducting multiple transactions to avoid reporting." *See* "Bank Secrecy Reporting Requirements Have Not Yet Met Expectations, Suggesting Need for Amendment," Report to the Congress of the United States by the Comptroller General, Doc. 6 GED–81–80 (July 23, 1981).

In 1986, another group of decisions was issued that addressed CTR issues. In *United States v. Denemark*, 779 F.2d 1559 (11th Cir.1986), appellant had been convicted of using a trick, scheme, or device to conceal from the Internal Revenue Service the existence, source, origin, and transfer of approximately $154,232.50 by the purchase of fourteen cashier's checks and two personal checks in amounts less than $10,-000 for the purpose of avoiding the filing of CTR's as required by 31 U.S.C. § 5313. On appeal, appellant argued that his transactions should not be considered together as a single transaction, because 31 U.S.C. § 5313 does not provide for such treatment.

The court of appeals agreed that a single transaction had not taken place. The court stated: "Here, there was no transaction in a financial institution which would require any such institution to file a CTR. The recognized fact that Congress sought to give the Treasury an opportunity to obtain information about large amounts of cash cannot have the effect of making criminal conduct that does not fall within the very wide scope of Section 1001." 779 F.2d at 1563.

In *United States v. Giancola*, 783 F.2d 1549 (11th Cir.1986), defendants appealed their convictions on two counts of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Defendants conspired to defraud the United States by structuring certain currency transactions totaling several hundred thousand dollars to thwart the ability of the United States to obtain information concerning currency transactions of more than $10,000 under 31 U.S.C. § 5323(a).

The Eleventh Circuit Court of Appeals affirmed the convictions, stressing that there was ample proof that the defendants bought cashier's checks or money orders for more than $10,000 at different branches of the same bank on a single day from the same cache of currency. 783 F.2d at 1551. The *Giancola* court distinguished *Denemark* on the grounds that in *Denemark* the transactions did not occur on the same day or with the same bank, and thus adopted the reasoning of the *Sanchez Vazquez* court:

> The court believes that the statute, 31 U.S.C. § 5312, and the regulations 31 C.F.R. 103.11, must be read together in determining the meaning of the term "financial institution."
>
> The court determines that the correct interpretation of the implementing regulations in defining the term "financial institution" is a bank, including each of its branches. Thus, if the financial institution (*i.e.*, the bank or in particular any

of its branches) is aware of its cash transaction in excess of $10,000 on a particular day, the bank or its particular branch must file a CTR. Likewise, if there are multiple cash transactions at different branches of the same financial institution (*i.e.*, bank) which exceed $10,000, then that particular bank must file a CTR.

*Sanchez Vazquez,* 585 F.Supp. at 993.

In *United States v. Reinis,* 794 F.2d 506 (9th Cir.1986), appellant had been convicted of aiding and abetting a bank's failure to report currency transactions as required by 31 U.S.C. § 5313(a) (the "Reporting Act") in violation of 18 U.S.C. § 2. On ten different days, appellant and his agents had purchased cashier's checks totalling in excess of $10,000 from the same bank. 794 F.2d at 508.

The court of appeals reversed the conviction, noting that it had previously held that the Reporting Act and its regulations do not impose a duty on a participant in a currency transaction with a bank to inform the bank of the nature of the transaction, and that a participant could not aid or abet a bank's failure to report currency transactions where there was no evidence that the bank had knowledge of the nature of the transactions. 794 F.2d at 507 (citing *United States v. Varbel,* 780 F.2d 758 (9th Cir.1986).

In *United States v. Varbel,* appellants had been convicted of conspiracy to conceal and concealing material facts within the jurisdiction of the Internal Revenue Service. They had arranged for the purchase of six cashier's checks in amounts less than $10,000 over three days at different banks to avoid the filing of a CTR by any of the banks. 780 F.2d at 759.

Here, the Ninth Circuit reversed the convictions, after concluding that the plain meaning of the statutes and regulations was unambiguous: only financial institutions are required to file CTR's; and even financial institutions need not file a CTR when the amount of the currency transaction is less than $10,000. 780 F.2d at 762. Since, here, the banks had no knowledge of the manner in which the cashier's checks

were purchased, the banks committed no crime by failing to file CTR's. Moreover, appellants could not have aided, abetted, or caused anyone to commit a crime. *Id.*

Finally, in *United States v. Perlmutter,* 636 F.Supp. 219 (S.D.N.Y.1986), defendant was charged with aiding and abetting a bank in its failure to file a CTR in violation of the Reporting Act, 31 U.S.C. § 5311 *et seq.* According to the Government, the defendant had made two deposits of $9,800 each into two different accounts at the same bank on the same day. The next day, deposits of $200 each were made into the same two accounts.

The court summarized the conflicting opinions of the various panels of the courts of appeals and of the district courts and concluded that the charges should be dismissed to prevent violation of the defendant's fifth amendment right to due process. The court criticized the decisions that reached contrary conclusions for employing a "cart-before-the-horse" reasoning process. 636 F.Supp. at 219. The *Perlmutter* court explained that it is improper to assume first that the transactions may be grouped together so as to create a hypothetical bank violation of the Reporting Act, and then charge the defendant with aiding, abetting, or causing the bank to fail in its reporting duties. 636 F.Supp. at 223.

In sum, if nothing else, this conglomeration of conflicting cases demonstrates that reasonable people can and do disagree over the nature and scope of the proscriptions of 31 U.S.C. § 5313 and 31 C.F.R. § 103.22. Certainly, some valid factual distinctions can be drawn between any two or more of the cases relating to the number of transactions undertaken, the number of days over which the transactions were undertaken, the relative "openness" of the transactions, and the interrelation of the banking facilities used. However, even considering such distinctions, one cannot reconcile on the basis of one single theory all of the decisions. Thus, the court is compelled to select a result that is most consistent with the principles underlying the fifth amendment. Accordingly, the court determines that the statute and regulations are

unconstitutionally vague as applied to Risk, and the claims asserted in counts 1 through 4 of the indictment must be and are dismissed.

It is beyond dispute that conduct made punishable by the Government must be the subject of a valid criminal statute that existed at the time of the alleged offense. *Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964). It is also similarly well settled that criminal laws are to be strictly construed. The Supreme Court has recently stated: "[A] penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Only if these principles are strictly adhered to can citizens rest assured that they will not be deprived of life, liberty, or property without due process of law.

In the present case, Risk cannot be held responsible for knowing he was required to file a CTR for transactions conducted at several branches of Merchants Bank on the same day by the same person when each of the transactions involved an amount of money less than $10,000. This conclusion is bolstered by the analysis of the reporting statute contained in a report by the Comptroller General submitted to Congress over five years before the present indictment was returned. In that report, the Comptroller General wrote: "The regulations were silent on the propriety of a customer's conducting multiple transactions to avoid reporting," and "although the regulation[s] required reporting for each single transaction above $10,000, they did not specifically prohibit dividing a large transaction into several smaller transactions to circumvent the reporting requirement." Report of the Comptroller General of the United States, "Bank Secrecy Act Reporting Requirements Have Not Yet Met Expectations, Suggesting Need for Amendment," 6 GED–81–80, at pp. 23–24 (July 23, 1981).

The court's conclusion is further bolstered by review of other legislation subsequently enacted to eliminate the ability of persons to "structure" transactions to avoid reporting requirements. Section 6050I(a) of Title 26 of the United States Code, enacted in July, 1984, provides: "Any person (1) who is engaged in a trade or business, and (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions), shall make the return described [in another section] with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe." Though banks are specifically exempted from this provision in section 6050I(c), it is clear that Congress knows how to clearly require persons to file reports regarding related cash transactions when it wants to. Since Congress failed to be equally clear in Title 31, the Government cannot persuasively argue that banks and banking officials have been provided a clear warning of prescribed and proscribed conduct.

The court recognizes that the *Richter* and *Gimbel* decisions summarized at pages 17–20 of this entry are the only reported decisions of courts in this circuit which address the CTR issues. Though decisions of those courts are not binding on this court, it is regretful that this court cannot join them in espousing a uniform view on this subject. This court recognizes that consistency among the district courts in this circuit is a desirable goal. However, the court feels it must reject the approach taken by those courts, and states the basis for its conclusion in the following paragraphs.

The flaw in the *Richter* and *Gimbel* decisions lies in their statement that: "Even if the bank had no duty to file a CTR in the multiple deposit situation, the crime had already been committed; the defendants had intentionally structured their transactions to evade the reporting requirements of the Act." *Richter,* 610 F.Supp. at 489–90; *Gimbel,* 632 F.Supp. at 754. This analysis presupposes a duty to file a CTR in a multiple deposit situation. That presupposed duty is the premise of the court's

conclusion set forth in the remaining portion of the holding: "The defendants had intentionally structured their transactions to evade *the reporting requirements of the Act.*" (emphasis added).

However, if there are no reporting requirements in a multiple deposit situation, there can be no duty to report and consequently no intent to evade that duty.

The only apparent source for asserting that a duty exists to file a CTR in a multiple transaction situation is in a form prescribed by the Secretary of the Treasury. That form provides: "Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them." Form 4789 (Dept. of Treasury 1980). However, that form was not properly promulgated as an implementing rule to the statute by publication in the Federal Register. Therefore, the reliance upon this form by other courts, either wittingly or unwittingly, was misplaced, and this court is compelled to conclude that the statute and regulations are silent as to a multiple transaction situation.

Though this conclusion that the statute and regulations did not expressly require reporting in a multiple transaction situation at the time of Risk's alleged violations will have the unfortunate consequence of allowing individuals to defeat the statute's purpose, the perceived harm is greatly mitigated by recent administrative action. Amendments to 31 C.F.R. § 103 have been proposed which meet the present uncertainty in the law by clearly requiring multiple currency transactions to be treated as a single transaction if the financial institution is aware that they are by or on behalf of one person and that they total more than $10,000 during any one business day. *See* 51 Fed.Reg. No. 164, at p. 30233.

For all of the foregoing reasons, the defendant's motion to dismiss counts 1–4 of the indictment is GRANTED. The defendant's alternative bases for dismissing counts 1 through 4 need not be, and therefore are not, addressed.

### 2. *Count 5—Vagueness*

■ The defendant also argues that count 5 is too vague to charge an offense against the United States, because it fails to allege with the required precision the false statements claimed to have been made by the defendant. He argues that more specificity is required to satisfy the sixth amendment to the United States Constitution and Rule 7(c) of the Federal Rules of Criminal Procedure.

Count 5 charges that:

On or about the 30th day of December, 1985, in Marion County, in the Southern District of Indiana, JOHN T. RISK did make a false entry in a report and statement of Merchants National Bank & Trust Company of Indianapolis, the deposits of which were then insured by the Federal Deposit Insurance Corporation, with intent to defraud said bank; in that he did make false statements concerning the disposition of funds relating to a banking transaction with an undercover agent of the Internal Revenue Service known to the grand jury and concerning his business contacts with said person in a "Merchants Bank Officers Sales Program Report of Sale" for the purpose of obtaining a commission from said bank; which being in violation of Title 18, United States Code, Section 1005.

In response, the Government argues that the defendant has been provided a copy of the report alleged to contain false statements and that when the indictment is read in light of that document, it is not vague. The defendant replied by complaining that count 5 does not spell out what part or parts of that document are false.

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged. The essential facts are required so that a defendant is clearly apprised of the charges and so that he may protect himself against possible threats of double jeopardy. *United States v. Siegel*, 472 F.Supp. 440, 442 (N.D.Ill. 1979); *United States v. Allied Asphalt*

*Paving Co.*, 451 F.Supp. 804, 812 (N.D.Ill. 1978).

Here, the indictment charges that the defendant made a false entry in a bank report, with intent to defraud the bank, for the purpose of obtaining a commission from the bank. The false statements are alleged to concern "the disposition of funds relating to a banking transaction with an undercover agent of the Internal Revenue Service" and "his business contacts with [the agent]." The bank report in which the statements are alleged to be made is identified as a "Merchants Bank Officers Sales Program Report of Sale." These facts are alleged to set forth a violation of 18 U.S.C. § 1005.

The court finds that these allegations are sufficient to inform the defendant of the charges against him for purposes of Rule 7(c) and the sixth amendment. While it may have been preferable for the Government to explicitly set forth in the indictment the exact language in the document that it alleges to be false, the approach taken is not impermissibly vague. The indictment does not merely track the language of the statute as is suggested by the defendant. Moreover, the relief granted by the court in its discussion of the defendant's motion for a bill of particulars will provide the defendant with specific notice of the portions of the bank report alleged to be false. This relief, though unnecessary to address any legal insufficiency of the indictment, will prevent any unfair surprise to the defendant at trial. The motion to dismiss count 5 of the indictment for vagueness is DENIED.

### 3. *Count 5—Selective Discrimination*

■ The defendant moves to dismiss all five counts of the indictment as being the result of selective, discriminatory prosecution in violation of the fifth amendment. In support of his motion he submits a copy of the United States Attorney's Press Release of October 1, 1986, a letter from defendant's counsel to the United States Attorney, and the Assistant United States Attorney's response. He further requests that the court take judicial notice that no other employee of Merchants National Bank (or any other bank in this district) has been prosecuted for a similar offense.

In response, the Government notes that every prosecution for violation of the criminal laws is presumed to be undertaken in good faith and states conclusorily that the defendant has not demonstrated and cannot demonstrate that this prosecution was brought in bad faith. The defendant replied by reasserting the need for an evidentiary hearing to resolve the matter.

The defendant has not, as alleged in his brief, presented a prima facie case of selective discrimination. The correspondence between defendant's counsel and the United States Attorney's office shows nothing more than a disagreement over what the facts are with respect to this prosecution. There is no evidence of any animus toward the defendant on the part of the Government. If a hearing were to be held on the matter, defendant gives the court no information as to what evidence would be adduced and what the evidence would prove. Finally, the press release specifically states that the investigation is ongoing with respect to the potential of criminal liability of other individuals. *See* Exhibit I to Defendant's Brief, at p. 5.

For the foregoing reasons, the defendant's motion to dismiss all five counts of the indictment as being the result of selective discrimination is DENIED.

### F. *Motion for Bill of Particulars*

■ The defendant also moves, as an alternative to the motion to dismiss, for a bill of particulars. Specifically, he seeks disclosure of the amounts of currency involved in the transactions referred to in Counts 1-4 of the indictment, descriptions of the "transactions" involved in Counts 1-4, statements of the essential elements of each offense charged, statement of the authorities relied on by the Government requiring the filing of a currency transaction report, and an identification of the portions of the "Merchants Bank Officers Sales Program Report of Sale" alleged to be false.

Since counts 1 through 4 of the indictment are dismissed by prior rulings set out in this entry, the requests for disclosure of information relating to those counts are now moot. To this extent, the motion for a bill of particulars is DENIED. However, the request relating to count 5 remains to be considered. As to that request, the Government argues that it need not disclose anything beyond what is included in the indictment and what is being produced in discovery. In his reply, the defendant alleges that the Government's response is nothing more than another attempt by the Department of Justice to circumvent Rule 7(f) of the Federal Rules of Criminal Procedure. Further, the defendant asserts that it is necessary for resolution of the issues raised in the motion to dismiss to have before the court the evidentiary details sought by this motion. Finally, the defendant argues that the voluntary discovery disclosures made by the Government simply do not put the defendant on notice of the Government's theory.

The sole purpose of a bill of particulars is to adequately inform the defendant of the charges against him. *United States v. Isaacs,* 347 F.Supp. 743, 762 (N.D.Ill.1972). The Government is not required to supply its evidence in advance of trial or to reveal its legal theory by way of a bill of particulars. *Id.*

Here, the indictment, while constitutionally adequate to inform the defendant of the offense charged, is insufficient to enable him to prepare for trial and to prevent surprise. The court does not expect the Government to provide a detailed evidentiary disclosure of such matters as names of witnesses or a complete explication of its theory of the case, but the court does expect, and hereby ORDERS, the Government to disclose to the defendant the specific portions, segments, or sentences of the bank report that are alleged to be and that the Government intends to prove are false.

To this extent, the defendant's motion for a bill of particulars is GRANTED.

### G. *Motion to Suppress Evidence*

The defendant moves the court to suppress the evidence of a conversation among the defendant and three special agents of the Criminal Investigation Division of the Internal Revenue Service. Several factual issues have been raised by the parties in their briefs addressing this motion; therefore, both parties have requested an evidentiary hearing on the motion. Because such a hearing is required and would be helpful to the court in resolving the factual issues, the request for such a hearing is GRANTED. The court will rule on the motion to suppress following the hearing, which has previously been set for Wednesday, February 11, 1987, at 9:30 a.m.

### H. *Motion for Discovery and Inspection*

The defendant moves the court to order the Government to produce for inspection some 47 different categories of material. The categories include, but are not limited to, such material as written or recorded statements the Government intends to offer into evidence at trial, tangible objects obtained in the course of the Government's investigation, names and addresses of all witnesses, any test or examination results the Government intends to offer into evidence, grand jury transcripts, information obtained by use of authorized or unauthorized wiretaps, personnel files of Government agents involved in the case, and copies of any documents the Government has obtained in investigating the case.

In response, the Government states that it has provided and will continue to provide to the defendant all matters of evidence to which he is entitled pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and all other applicable rules, statutes, and case law. The Government further states: 1) that grand jury transcripts of prospective witnesses and investigative reports pertaining to those witnesses will be provided in due course (presumably meaning at the time such witnesses testify as provided by the Jencks Act), and 2) that the Government

has made available all relevant tape recordings in its possession.

In his reply, the defendant simply summarizes the total pagination of filings related to this motion submitted by the two parties, states that the Government has failed to give authority for its "refusal to provide information as requested," and renews its request for an evidentiary hearing and oral argument so that "this Court will be convinced of the merits found in the [defendant's motion]."

The Government, having represented that it is complying with Rule 16, has obviated the need for the court to rule on the defendant's motion. If the defendant has reason to believe that the Government is not complying with Rule 16, and evidence to substantiate his belief, then he should present it to the court. Presently, there is nothing before the court to suggest that the government is failing to perform its obligation under Rule 16; therefore, the court has no reason to question the government's representations. The defendant's motion is DENIED.

### I. *Motion for Disclosure of Brady Information*

Finally, the defendant moves the court to order the government to produce some 16 categories of material pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure and the principles of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or, alternatively, to make an in camera inspection of all such material. In response, the government states only that it has provided and will continue to provide to the defendant all matters of evidence to which he is entitled pursuant to *Brady*.

Again, the government's response obviates the need for the court to rule on the defendant's motion. There is nothing before the court to suggest that the government has failed to meet its discovery obligations. Therefore, the motion for disclosure is DENIED.

The defendant's alternative motion for in camera inspection is also DENIED. There has been no showing of a need for such an inspection, and the court will not oblige the defendant by conducting an unwarranted fishing expedition.

### J. *Motion for Continuance*

The matter is presently set for trial on February 17, 1987. The defendant moves for continuation of the trial date until March 2, 1987, arguing that the case is very complex and that defense counsel have other business conflicts. The Government opposes the motion noting that the matter has already been continued once at the defendant's request based on an assurance that the defendant would be ready on February 17th.

Having dismissed four of the five counts of the indictment, the court has alleviated, if not eliminated, the problems that the defendant raises in his motion. Therefore, a continuance is not necessary, and the motion is DENIED.

### III. *Conclusion*

For all the foregoing reasons, the court 1) DENIES IN PART and GRANTS IN PART the motion for an evidentiary hearing, 2) DENIES the request for oral argument, 3) DENIES for mootness the request for notice of intent to use Rule 16 evidence, 4) DENIES the motion to produce, 5) GRANTS IN PART and DENIES IN PART the motion to dismiss, 6) DENIES IN PART and GRANTS IN PART the motion for a bill of particulars, 7) withholds a ruling on the motion to suppress, pending an evidentiary hearing, 8) DENIES the motion for discovery and inspection, 9) DENIES the motion for disclosure of *Brady* information and DENIES the alternative motion for in camera inspection of such information, and 10) DENIES the motion for continuation of the February trial date.