842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Joseph BLAY, Defendant-Appellant.
 No. 87-3084.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1988.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and JOINER, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant-appellant Robert Joseph Blay (defendant) appeals his jury convictions on one count of distribution of controlled substances in violation of 21 U.S.C. Sec. 841(a)(1), and one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. Sec. 846. The defendant was sentenced to a total of ten years imprisonment. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant was indicted, along with thirty-one others, in a ninety-four count indictment returned on July 28, 1986. Defendant and his codefendants were either members or associates of the Avengers Motorcycle Club, a club which operated primarily in Michigan and Ohio. The indictment alleged that the defendants had used their association with the club to obtain access to controlled substances for purposes of distribution.
 
 
 3
 The trial in this case was held from October 6, 1986, through October 21, 1986. Defendant was tried with three others while the remaining indicted defendants' cases were disposed of prior to trial.
 
 
 4
 Proof of defendant's involvement in drug-related activities came mainly from two sources. First, telephone conversations recorded as a result of a court-ordered wiretap (the validity of which is not challenged here) implicated the defendant as a drug trafficker. Second, former club members testified against defendant, stating generally that defendant was a well-established source of controlled substances, including, although not limited to, cocaine, marijuana, and lysengic acid diethylamide (LSD).
 
 
 5
 Ron Haddox, a former club member, testified against defendant. Haddox was a protected witness who had secretly been working for the FBI for several years. Haddox testified over the course of two days, and at several times during his testimony, he asserted that he had seen defendant distribute illegal substances.
 
 
 6
 Former club member Sam Stites also testified against defendant. Stites testified that defendant was an Avengers Club officer (national vice-president), that he had seen defendant distribute narcotics, and that on at least three occasions he had collaborated with defendant in the delivery of controlled substances from the Avengers' clubhouse in Pontiac, Michigan, to the clubhouse in Columbus, Ohio. Each of these deliveries was characterized by Stites by the fact that defendant was the source of the narcotics, the drugs were taken to club member Gary Jonas in Columbus, Ohio, and the exchange of narcotics and money occurred in the basement of the Columbus clubhouse.
 
 
 7
 Prior to cross-examining either Haddox or Stites, defendant's trial counsel, James Howarth, requested a recess to further prepare his examination. As to Stites, Howarth asserted a recess was necessary to review the transcript of Haddox's testimony before the grand jury. The transcript had been provided to defense counsel prior to Stites' taking the stand under Federal Rule of Criminal Procedure 26.2 ("the Jencks Act").[1] During the colloquy between the district judge and Howarth, the judge suggested that if defendant's counsel wished, he could wait and study the grand jury testimony, and then cross-examine Stites after counsel for the other defendants. Howarth, however, felt it was "necessary strategically" for him to cross-examine Stites first. J.A. at 252. On inquiry from the district judge, the government prosecutor stated that Stites' grand jury testimony was not very long and could be read in less than ten minutes. As a result, the request for a recess to review the testimony was denied. Nonetheless, a review of the record reveals that during cross-examination, other defense counsel did question Stites as to specific statements made during his grand jury testimony, attempting to thereby impeach Stites.[2] Defendant argues on appeal that the denial of counsel's request for a recess was error, leaving counsel unprepared to effectively cross-examine Stites.
 
 
 8
 As to Haddox, Howarth's request for a recess to prepare cross-examination appears to be based on other grounds:
 
 
 9
 MR. HOWARTH: Your Honor, I have a problem. A small problem is of course we got the Jencks Act material yesterday, it is very voluminous, but that is a small problem in preparing cross-examination. The big problem is this: I would like to cross-examine first, but that's not essential to the problem. The Court has ruled that should any counsel go over a matter following counsel on cross-examination will not be allowed to cover the same areas once they have been covered--once questions have been asked and answers given.
 
 
 10
 THE COURT: That is correct.
 
 
 11
 MR. HOWARTH: I have no problem with that, Your Honor. Last night, about 10:00 p.m., I came into possession of a large volume of materials regarding this witness, not written materials, oral materials. They are tremendously important to cross-examination. I was given names, I was given addresses, telephone numbers of people who know a tremendous amount about this witness, about his background, and the indication, I am indicating to the Court upon information and belief that a substantial part of his testimony on direct is incorrect, either mistaken or lies. Your Honor, I have had no opportunity--I was up until midnight last night on this.
 
 
 12
 THE COURT: Mr. Howarth, I will make it very clear. You have known about this witness for a long time.
 
 
 13
 MR. HOWARTH: Since Monday, Your Honor.
 
 
 14
 THE COURT: This is Wednesday. I don't see any reason why this matter should be delayed. If you are in a position to cross-examine him, fine. I don't know the details of this information you have come into contact with. Whether this man is telling the truth or not, you would know from contacting your clients. A third party isn't going to be able to tell, so far as I can see, in a significant fashion, the basis of your cross-examination. The jury will believe him or not believe him, I do expect the cross-examination to go forward. If you want somebody else to do it, somebody else may do it. Now, a statement of yours, I can deal with. If you have something specific, direct, that I can deal with, I will hear you, but I would say to you that I have heard this same statement made times without number by defense counsel, and I am just not willing to pay any attention to it.
 
 
 15
 MR. HOWARTH: Will Your Honor allow me to make a presentation to the Court in camera, naming the party who spoke to me, naming the information in particular that was given to me, naming the names of people, addresses, telephone numbers? It is a volume of material, and as I say, I came into it at 10:00.
 
 
 16
 THE COURT: You see, Mr. Howarth, that is consistent, it always happens. Everybody comes into possession of material about ten minutes before the cross-examination, and the Court is now asked to do something about it and I won't. You go forward or somebody else goes forward, I am going to follow our ordinary procedure. Now, let's go to it.
 
 
 17
 J.A. at 131-33. The motion for a recess was denied, and defense counsel proceeded to cross-examine the witness. Defendant now argues that this denial was an abuse of discretion.
 
 
 18
 Kenneth Colby, a police officer, also testified for the government. Colby participated in the execution of a search warrant on the residence of an Avengers Club officer. During the search, the minutes of the Avengers Motorcycle Club's December 3, 1983, National Officers' Meeting were seized. The minutes listed the national officers for the club on that date, contained records on votes taken at the meeting regarding the use of controlled substances, and also noted that each Avengers' clubhouse should keep a "donation jar for imprisoned brothers."
 
 
 19
 Howarth objected to Colby's reading from the minutes prior to their being admitted into evidence but the district judge overruled this objection. However, the judge sustained the objection with respect to the reference to imprisoned brothers and instructed the jury to disregard the remark. The judge reasoned that the reference merely created "the notion in the minds of the jury that these are a bunch of thugs and convicts ..." and tended to create "guilt by association." J.A. at 98. When these minutes were eventually admitted into evidence as Government's Exhibit 3-1, the language referring to imprisoned brothers was excluded. Defendant now asserts that the passing reference to imprisoned brothers requires reversal.
 
 
 20
 Defendant testified in his own behalf, as did his wife, Margaret Blay. During the course of the government's cross-examination of defendant, he was asked whether he had attended a New Year's Eve party at the Avengers' Columbus clubhouse. He stated he had, and the government then asked whether the defendant had sought to purchase marijuana for his wife:
 
 
 21
 Q. Isn't it a fact, Mr. Blay, that during that party and afterwards the following day, you were attempting to contact Mike Morris, another club member, in order to obtain marijuana for your wife Marge?
 
 
 22
 A. Not that I remember.
 
 
 23
 Q. You deny doing that?
 
 
 24
 A. Yes.
 
 
 25
 J.A. at 314-15.
 
 
 26
 When Mrs. Blay was cross-examined, she was also questioned about her and her husband's activities during the New Year's Eve party:
 
 
 27
 Q. Were you present in the club house at the New Year's Eve party this last year?
 
 
 28
 A. Yes.
 
 
 29
 Q. At that time did you attempt to locate Mr. Morris in order to obtain marijuana?
 
 
 30
 A. No.
 
 
 31
 Q. Did your husband attempt to get that marijuana on your behalf?
 
 
 32
 A. To my knowledge, no.
 
 
 33
 In rebuttal, the government called Mike Morris and questioned him about whether he had provided defendant's wife with marijuana at defendant's request. Morris responded in the affirmative, stating he had done so on more than one occasion.
 
 II.
 A.
 
 34
 Defendant first argues that it was reversible error for the district court to deny counsel's recess request to develop the cross-examination of Haddox in that the denial left defendant incapable of effectively exercising his Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. In our view, however, the district court acted properly in exercising its sometimes difficult discretion as to trial management.
 
 
 35
 A district judge in a case such as this involving several defendants, days of testimony, and a myriad of exhibits, must exercise remarkable administrative skills in bringing the case to judgment. As a result, we are unwilling to quickly overturn the district court's decisions on issues involving the progress of a trial. "A district court has wide discretion in the scheduling of a trial which should not be disturbed in the absence of manifest abuse...." United States v. Van Dyke, 605 F.2d 220, 227 (6th Cir.), cert. denied, 444 U.S. 994 (1979). The district judge's decision in the present case, far from being an abuse, seems to us well-founded. Cf. United States v. Mitchell, 777 F.2d 248 (5th Cir.1985), cert. denied, 106 S.Ct. 2721 (1986) (holding that a motion for continuance is within the discretion of the trial court); Robinson v. United States, 718 F.2d 336, 338 n. 1 (10th Cir.1983) ("Motions for continuance are addressed to the sound discretion of the trial court. Although there are limits on this discretion, the limits are not exacting and ordinarily the appellate court will not interfere with the district court's exercise of discretion.") (citing 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2352 (1971)).
 
 
 36
 Moreover, it appears defendant has failed to show precisely how he was prejudiced as a result of the district court's decision; defense counsel has not alleged he was unable to pursue his source of "oral materials" subsequent to Haddox's testimony. Further, the record discloses that Howarth--from whatever sources--engaged in a searching cross-examination of Haddox. From the state of the record before us, defendant has simply failed to show any sort of serious prejudice or manifest abuse of discretion to warrant reversal. See United States v. Webster, 734 F.2d 1048, 1056 (5th Cir.), cert. denied, 469 U.S. 1073 (1984).
 
 
 37
 Defendant next asserts that the district court committed reversible error in failing to grant him a recess to review the grand jury testimony of the government's witness, Sam Stites. Federal Rule of Criminal Procedure 26.2 provides that prior statements of a witness should be provided to opposing counsel, "after [the] witness ... has testified on direct examination...." See supra n. 1. The Rule further provides that after disclosure:
 
 
 38
 Upon delivery of the statement to the moving party, the court, upon application of that party, may recess proceedings in the trial for the examination of such statement and for preparation for its use in the trial.
 
 
 39
 Fed.R.Crim.P. 26.2(d) (emphasis supplied).
 
 
 40
 In United States v. Holmes, 722 F.2d 37 (4th Cir.1983), the Fourth Circuit held that the Jencks Act requires the granting by a district court of a reasonable opportunity to review the materials disclosed under Fed.R.Crim.P. 26. In Holmes, the court first held the indictment returned against the defendant deficient in failing to particularly describe the nature of the charges. Turning to the disclosure issue, the court stated:
 
 
 41
 [T]he Jencks Act contemplates not only the furnishing of the statement of a witness but a reasonable opportunity to examine it and prepare for its use in the trial. That the statements in this case were furnished according to the original undertaking, as the government contends, only begs the ultimate question. Here it is clear that defendants were not afforded a reasonable opportunity to examine and digest the mass of material furnished them on the Sunday before the Monday that the trial began. Especially is this so because, as we have stated, defendants had only the minimum notice that due process requires of the charges against them. Their need for careful study of Jencks Act materials was greater than in the usual case where greater specificity of the charge is alleged. It was therefore an abuse of discretion on the part of the district court to deny a reasonable delay in the progress of the trial to permit counsel to complete their studies and preparation.
 
 
 42
 Holmes, 722 F.2d at 40-41.
 
 
 43
 Without either adopting or rejecting the "reasonable opportunity" requirement announced by the Fourth Circuit in Holmes, we find the present case sufficiently distinguishable from Holmes to require affirming the district court. Four facts lead us to this conclusion. First, the indictment returned against the defendant in the present case, unlike the one reviewed in Holmes, alleged with all due specificity the nature of the crime charged, especially with respect to the deliveries of substances between Pontiac, Michigan, and Columbus, Ohio. J.A. at 12. Second, the grand jury testimony involved here was characterized as short and could be readily digested. Third, the record reflects that Stites was cross-examined as to his grand jury testimony. Finally, the defendant's attorney has simply failed to point to anything in the testimony which would have aided him in cross-examination. We are of the view that no prejudice can be said to attach to the district court's denial of a recess under the circumstances involved here. See Rosenberg v. United States, 360 U.S. 367 (1959) (holding that where the Jencks Act is not complied with at all, a harmless error analysis is applicable); see also United States v. Pope, 574 F.2d 320 (6th Cir.), cert. denied, 439 U.S. 868 (1978) (holding that where the prosecutor provides Jencks Act material after the witness has concluded testimony, reversal is required only if the error is not cured).
 
 
 44
 As a result, we hold that the district court acted within its discretion in denying defendant's request for a recess. We do, however, note that as a general proposition, a district court judge would do well to err on the side of generosity in allowing defendant's counsel to review the sometimes critical record of a witness' grand jury testimony. Nevertheless, in the present case, no prejudice has been shown by the district court's failure to do so.
 
 B.
 
 45
 Defendant also asserts that reversible error occurred when Officer Colby read to the jury the statement contained in the minutes from the Avengers' National Officers' Meeting relating to donation jars for imprisoned brothers. While this document was admitted into evidence, the reference to donation jars was excluded. Defendant, however, argues that the jury was unduly prejudiced by the reading of this statement and that the evidence should have been excluded under Federal Rule of Evidence 403 as its probative value outweighed its prejudicial impact.
 
 
 46
 Our review of the record reveals that defendant failed to object under Federal Rule of Evidence 403 or Federal Rule of Evidence 401, relating to relevance, during the course of the trial. Apparently, defendant's sole objection at trial was that the witness was permitted to read from the document prior to its being admitted into evidence. In point of fact, the document itself was later admitted into evidence, excluding the reference to donation jars. Furthermore, as earlier noted, the district judge sua sponte concluded that the reference to the donation jars was excessively prejudicial and should not have been brought before the jury. Accordingly, he gave a limiting instruction saying that, "I am going ... to instruct the jury to disregard this last portion of the document that was read."
 
 
 47
 Where a limiting instruction is given, "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, Richardson v. March, [107 S.Ct. 1702 (1987) ], and a strong likelihood that the effect of the evidence would be 'devasting' to the defendant, Bruton v. United States, 321 U.S. 123 (1968)." Greer v. Miller, 107 S.Ct. 3102, 3109 n. 8 (1987). See also United States v. Adams, 799 F.2d 665, 671 (11th Cir.1986), cert. denied, 107 S.Ct. 2464 (1987) ("When the evidence is withdrawn from the jury with an instruction to disregard it, 'the error is cured unless the evidence is so highly prejudicial as to render the error incurable.' ") (quoting United States v. Benz, 740 F.2d 903, 916 (11th Cir.1984), cert. denied, 474 U.S. 817 (1985)). Hence, we find reversible error only where the stricken testimony is so highly prejudicial that it would have "a substantial impact on the jury's verdict." United States v. Kimble, 719 F.2d 1253, 1257 (5th Cir.1983), cert. denied, 464 U.S. 1073 (1984) (quoting United States v. Klein, 546 F.2d 1259, 1263 (5th Cir.1977).
 
 
 48
 Given the facts of the present case, where several witnesses testified as to defendant's involvement in the distribution ring charged in the indictment, any error which might be attached to the admission, and then striking of the testimony about the donation jars, is not so highly prejudicial as to call into question the jury's verdict. Thus, even assuming, arguendo, that this statement was improperly brought before the jury, we hold any error that occurred was cured.
 
 C.
 
 49
 Defendant's final argument can be quickly rejected. He argues that the testimony of Mike Morris regarding defendant's attempt to obtain marijuana for his wife, Marge Blay, was inadmissible under either Federal Rule of Evidence 404(b) (excluding evidence of other wrongs to prove the character of a person in order to show action in conformity therewith) and under Federal Rule of Evidence 608(b) (excluding evidence of specific prior acts of a witness for the purpose of attacking the witness' credibility.
 
 
 50
 While we recognize that Rules 404(b) and 608(b) do limit the admissibility of certain specific instances of conduct, they do so only in certain circumstances. Here, the testimony of Mike Morris bears directly on the conduct of defendant charged in the indictment. The evidence was not produced for purposes of credibility (Rule 608(b)) or to show character (Rule 404(b)). "[R]ule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness' testimony as to a material issue of the case." United States v. Opager, 589 F.2d 799, 803 (5th Cir.1979) (emphasis supplied).
 
 
 51
 The government introduced this evidence to rebut one of the defenses raised to its case; viz., that the defendant did not deal in narcotics. "A trial judge's determinations regarding the ... scope of rebuttal testimony will not be disturbed absent an abuse of discretion." Benedict v. United States, 822 F.2d 1426, 1428 (6th Cir.1987) (citing Geders v. United States, 425 U.S. 80, 86 (1976)). That the government was aware of its rebuttal evidence prior to the defense case is not determinative. Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982). Thus, we conclude the testimony of Mike Morris was properly admitted to rebut the defense's claim that defendant did not participate in the distribution of controlled substances at the party in question.
 
 III.
 
 52
 For the reasons stated, we AFFIRM the convictions of the defendant.
 
 
 
 *
 Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Fed.R.Crim.P. 26.2(a) provides:
 After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.
 
 
 [2]
 During the course of cross-examining Stites, other defense counsel specifically referred to page numbers of the grand jury testimony transcript and pointed out inconsistencies with what was being said at trial. J.A. at 263-64